**Caryn WILDE, Plaintiff,**

v.

**The COUNTY OF KANDIYOHI; Kandiyohi County Economic Development Partnership, Inc., a Minnesota corporation; Kandiyohi County Rural Development Finance Authority; and Wilton F. Croonquist, individually and in his capacity as Executive Director of Kandiyohi County Rural Development Finance Authority, Defendants.**

Civ. No. 4–92–693.

United States District Court,
D. Minnesota.

Jan. 25, 1993.

Robert James Zohlmann, Law Office, New London, MN, for plaintiff.

James Robert Andreen, Ratwik Roszak Bergstrom Maloney & Bartel, Minneapolis, MN, for defendant, County of Kandiyohi.

Ronald Carl Anderson, Hulstrand Anderson & Larson, Willmar, MN, for defendants, Kandiyohi County Economic Development, and Kandiyohi County Rural Development.

Donald Henry Walser, Kraft Walser Nelson & Hettig, Hutchison, MN, for defendant Wilton F. Croonquist.

## ORDER

DOTY, District Judge.

This matter is before the court on the plaintiff's motion for partial summary judgment and three motions brought by defendant Kandiyohi County: (1) motion for summary judgment; (2) motion to dismiss plaintiff's claim under section 1983 of Title 42 and, in the alternative, for summary judgment on that claim; and (3) motion to abstain. Based on a review of the file, record and proceedings herein, the court denies the plaintiff's motion for partial summary judgment and the County's motion to abstain; the court grants the County's motion for summary judgment.

## BACKGROUND

Caryn Wilde ("Wilde") owns or owned three businesses in Willmar, Minnesota: Executive Suites at Centre Pointe, Executive Suites on First and Crown Business Services. The Executive Suite businesses rent one person offices to tenants. Crown

Business provides secretarial and support services to the tenants of Executive Suites. Basic services like a general receptionist, telephone answering and incoming mail handling are provided to all tenants. Tenants can purchase additional services, including typing, word processing, copying, scheduling, and outgoing mail, from Executive Suites or Crown Business. Tenants receive a monthly bill itemizing charges for rent and services; additional services are paid for by the job although secretarial time was billed at an hourly rate. Wilde and her staff perform the secretarial work.

The Kandiyohi County Economic Development Partnership, Inc. ("Partnership") was incorporated in January 1989. The Partnership promoted business and economic development in Kandiyohi County. The County of Kandiyohi ("County") created the Kandiyohi County Rural Development Finance Authority ("Authority") in 1990 pursuant to a statute enacted by the Minnesota Legislature. Ch. 1, Art. 17 § 21, Laws of Minn., 1989 Special Session. The Authority also promoted economic development in Kandiyohi County but had levying powers that the Partnership lacked. Wilton F. Croonquist ("Croonquist") was the Executive Director and sole employee of both the Partnership and the Authority.[1]

In February 1989, the Partnership began leasing an office from Executive Suites at Centre Pointe. After the Authority was formed in 1990, it and the Partnership were located in the same office leased from Executive Suites. Wilde and her staff performed "normal" secretarial duties, including the services identified above, for the Partnership and Authority. Wilde supplied the equipment and, in addition to deciding who did the work, controlled how, when and where it got done. The Partnership and Authority paid either Executive Suites or Crown Business for the services on a monthly basis. Wilde was not provided vacation or holiday pay, sick leave, compensatory time, Social Security or Public Employees Retirement Association contributions, tax withholding, retirement or health insurance benefits or any other benefits.

Wilde performed some services for the Partnership and Authority which her businesses did not provide for other tenants and customers. Those services included discussing economic development issues with Croonquist, drafting press releases, preparing grant and award applications, creating and editing activity report forms and speeches, transcribing notes for reports to the County, and arranging meetings and conferences. In April 1991, Wilde spent 40 hours working for the Partnership and Authority while Croonquist was absent from the office for several weeks. Because these services were not provided to all Executive Suites tenants, Wilde refers to them as "other than normal" services. At Croonquist's direction and by necessity, Wilde, and not her staff, performed the "other" services. Wilde charged an hourly rate for these services and included them as secretarial charges on the monthly rent and services bill. The Partnership and Authority paid for the services in its monthly check to Executive Suites or Crown Business.

In November 1990, Croonquist, several other area leaders and Wilde took a 10 day fact finding trip to the Soviet Union to explore possible avenues of trade between Minsk and Southwestern Minnesota. Wilde prepared the grant application for the expedition for the Authority and she participated in the trip, however she did so as an area business owner.[2] The first incident of alleged sexual harassment occurred just before the trip when Croonquist asked

---

1. For purposes of resolving the pending motions for summary judgment, the court assumes without deciding that: (1) the Partnership and Authority are virtually the same entity; (2) the Partnership and Authority may be agents of the County; and (3) Croonquist may be considered an employee of the County.

2. Wilde attached the Final Application to the Southwest Initiative Fund Grant Program as an exhibit to her affidavit in support of her motion for partial summary judgment. The Project Narrative portion of the application states "Caryn Wilde, a business owner in Willmar, and the 1991 President of Willmar Opportunities has been invited to join the delegation. She is considering the invitation, and will give us an answer when she determines whether it will fit into her business schedule."

Wilde to come to his office and tried to grab and hug her. Wilde refused Croonquist's advances and told him they were unwelcome. During the trip, Croonquist allegedly tried to get Wilde to "lay and cuddle with him" and tried to kiss and fondle her. Croonquist allegedly continued to harass Wilde after they returned to Willmar, he repeatedly asked Wilde to come to his office to receive or perform work and then tried to grab, hug, kiss, fondle and stroke her. Wilde rebuked all of his harassing conduct.

Wilde obtained a restraining order against Croonquist in state court on February 11, 1992. Croonquist violated the order and was arrested. After his arrest, the alleged harassment finally ended. The Partnership and Authority terminated its oral lease with Executive Suites on April 30, 1992. Wilde sued Croonquist, the County and the Partnership and Authority for sexual harassment and discrimination in federal court on July 20, 1992. Wilde's federal law claims alleged that the defendants violated Title VII of the Civil Rights Act of 1964 and Title 42 of United States Code section 1983. Wilde also asserted various state law claims.

Wilde moved for partial summary judgment seeking an order that: (1) Wilde was an "employee" within the meaning of Title VII, (2) the Authority is a department or agency of the County, (3) all the defendants are "employers" within the meaning of Title VII, (4) the Partnership was an agency of the County or, in the alternative, the Partnership, Authority and County constitute a single employer under Title VII. The County filed a cross-motion for summary judgment arguing that because Wilde was an independent contractor of the Partnership and Authority, and not an employee, she cannot invoke the protection of Title VII.[3] In the alternative, the County claims

Wilde was not an employee of the County because the Partnership and Authority are separate entities from the County. The County sought judgment on the Section 1983 claim arguing that Wilde failed to show the County deprived her of a right secured by the Constitution or federal law. The County also moved the court to abstain from exercising its jurisdiction and defer to a declaratory judgment action filed by Croonquist in state court in October 1992.[4]

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires the trial court to direct a verdict if there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The sufficiency of the evidence to create an issue of fact for the jury is solely a question of law. *Id.* at 249, 106 S.Ct. at 2510. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.*

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient

---

**3.** The Partnership and Authority also submitted a brief arguing they were entitled to summary judgment on this issue.

**4.** Croonquist, claiming he was an employee of the County, sought indemnification by the County's insurer, Minnesota Counties Ins. Trust. The insurer refused to defend and Croonquist filed a declaratory judgment action in state

court. The insurer impleaded the remaining defendants and Wilde on December 15, 1992. On December 30, 1992, the County moved this court to abstain from exercising its jurisdiction in the federal proceedings pending resolution of the state court action. Both Wilde and Croonquist oppose the motion.

to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In addition, if a plaintiff fails to support an essential element of a claim, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). When analyzing a motion to dismiss, the court looks to the complaint as pled. The complaint must be liberally construed and viewed in the light most favorable to the plaintiff. The court will dismiss a complaint only when it appears the plaintiff cannot prove any set of facts that supports the claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### 1. Motion to Abstain

■■■ The County moved the court to abstain from exercising its federal jurisdiction pending resolution of a state court declaratory judgment action. The general, though not absolute, rule is a concurrent state action raising the same issue pending before a federal court does not justify abstention. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–18, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976). The state and federal actions involved in this case do not even raise the same issue. Whether Wilde or Croonquist are "employees" of the County within the meaning of Title VII is a question of federal law. The issue pending before the state court, however, is whether Croonquist is an employee covered by a Minnesota insurance contract. The court also notes that the County failed to deliver its moving papers in the time specified by Local Rule 7.1(a)(1) which requires moving papers for nondispositive motions to be delivered (not served) to the opposing party at least 14

days before the hearing. The court denies the County's motion to abstain and awards Wilde $500 in attorney's fees pursuant to Local Rule 7.1(d).

### 2. Title VII

The dispositive issue is whether Wilde was an employee under Title VII. Independent contractors are not protected by Title VII.[5] While it is a laudable goal to eliminate discrimination in all business relationships, Congress, in enacting Title VII, undertook the more limited task of eliminating discrimination in employment only. Accordingly, Wilde must prove an employment relationship existed between her and the Partnership and Authority to maintain a Title VII action.

■■■ Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). Whether a worker is an "employee" under Title VII is a question of federal law. *Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 339 (11th Cir.1982). Two tests have been devised by the federal courts to determine who is an "employee" for Title VII purposes: the economic realities test and the hybrid test. Under the economic realities test, a person is considered an employee if she, as a matter of economic reality, is likely to be susceptible to discrimination. *Armbruster v. Quinn,* 711 F.2d 1332, 1340 (6th Cir.1983). Although the hybrid test looks at the economic realities of the work situation, it focuses on the "extent of the employer's right to control the means and manner of the worker's performance." *Spirides v. Reinhardt,* 613 F.2d 826, 831 (D.C.Cir.1979).

Other factors considered by courts applying the hybrid test are:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision;

---

5. *See, e.g., Broussard v. L.H. Bossier, Inc.,* 789 F.2d 1158, 1160 (5th Cir.1986); *Armbruster v. Quinn,* 711 F.2d 1332, 1339 (6th Cir.1983); *Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 340–41 (11th Cir.1982); *Lutcher v. Musicians Union Local 47,* 633 F.2d 880, 883 (9th Cir.1980); *Sprirades v. Reinhardt,* 613 F.2d 826, 829 (D.C.Cir.1979).

(2) the skill required in the particular occupation;

(3) whether the "employer" or the individual in question furnishes the equipment used and the place of work;

(4) the length of time during which the individual has worked;

(5) the method of payment, whether by time or by the job;

(6) the manner in which the work relationship is terminated, i.e. by one or both parties, with or without notice and explanation;

(7) whether annual leave is afforded;

(8) whether the work is an integral part of the business of the "employer";

(9) whether the worker accumulates retirement benefits;

(10) whether the "employer" pays social security taxes; and

(11) the intention of the parties.

*Spirides,* 613 F.2d at 832.

■ Although Wilde insists she is an "employee" within the meaning of Title VII under either test, she urges the court to adopt the liberal economic realities test. The County, of course, endorses the hybrid test enunciated in *Spirides.* The Court of Appeals for the Eighth Circuit has not addressed the appropriate test for determining employee status under Title VII. The majority of circuit courts that have addressed this issue, however, have applied the hybrid test.[6] The court concludes that the hybrid test is the proper standard for determining whether a worker is an employee under Title VII. No single factor is conclusive in applying the hybrid test. *Spirides,* 613 F.2d at 831. Rather, the court must look at the totality of circumstances surrounding the working relationship between the parties, keeping in mind that the extent of the employer's right to control the worker is the most telling factor. *Id.*

■ Wilde concedes her initial arrangement with the Partnership and Authority was not an employment relationship. Nonetheless, she contends that it evolved into an employer employee relationship due to the expanded services performed specifically by Wilde. Wilde also emphasizes that the sexual harassment took place in the context of the "other" duties which required her to go to Croonquist's office. Wilde insists that the amount of control Croonquist exercised over her qualifies her as an employee under Title VII.

The court recognizes that the Partnership and Authority and Croonquist exercised some control over Wilde. However, Wilde operated as a sole proprietor and had wide latitude in the conduct of her business. Wilde dictated her own hours and those of her staff and worked under little supervision. For the most part, Wilde was free to work as she chose on a day-to-day basis. She had complete discretion over hiring and firing her staff. Although her performance of "other" services for the Partnership and Authority required Wilde to report to Croonquist's office, she was not required to spend certain or specific hours working for the Partnership and Authority. Wilde determined her own schedule and the method of payment for services rendered. The rate per hour Wilde charged for secretarial services, including the "other" duties, decreased as the total number of hours increased. In addition, Wilde was free to provide extra services to other tenants and customers. The court finds that because Wilde maintained a great deal of freedom in choosing her working hours and choosing the services she would provide to her customers, including the Partnership and Authority, her status was that of an independent contractor.

---

6. *See, e.g., Broussard v. L.H. Bossier, Inc.,* 789 F.2d 1158, 1160 (5th Cir.1986); *Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 340–41 (11th Cir. 1982); *Lutcher v. Musicians Union Local 47,* 633 F.2d 880, 883 (9th Cir.1980); *Sprirades v. Reinhardt,* 613 F.2d 826, 831–32 (D.C.Cir.1979). *See Knight v. United Farm Bureau Mut. Ins. Co.,* 950 F.2d 377, 378–79 (7th Cir.1991) (applying but mislabeling the *Spirides* test). The only district court in this Circuit faced with the issue also applied the hybrid test. *Perry v. City of Country Club Hills,* 607 F.Supp. 771, 773–74 (E.D.Mo. 1984). *See also Oestman v. Nat'l Farmers Union Ins. Co.,* 958 F.2d 303, 305 (10th Cir.1992); *Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 981–82 (4th Cir.1983); *EEOC v. Zippo Mfg. Co.,* 713 F.2d 32, 38 (3d Cir.1983) (each adopting *Spirides* test under Age Discrimination in Employment Act).

Besides the manner in which Wilde conducted her daily business, other factors indicate she was an independent contractor. Wilde furnished her own office space and equipment and paid for operating expenses. She was free to take a vacation whenever she deemed appropriate. Wilde was not paid personally for any services rendered. Rather, the Partnership and Authority paid for her services in a monthly rent and services check payable to Executive Suites or Crown Business. The Partnership and Authority did not treat Wilde as an employee. It did not pay her a salary, withhold taxes, or pay social security taxes for her. Wilde was not provided holiday or overtime pay, sick leave, compensatory time, retirement or health insurance benefits, or any other benefits ordinarily afforded employees.

Further evidence of the parties' intent can be found in Wilde's own conduct. Wilde files her taxes as a self-employed individual. In 1991, for example, Wilde reported business income and did not indicate any earned wages; she also described her business as "secretarial service, office rental, consulting." More evidence of Wilde's own intent is found in a memorandum from her to Croonquist dated April 28, 1991, outlining the advantages of the services provided by her businesses as compared to a "personal secretary." In the memorandum, Wilde notes her businesses provide the equipment and work space for her staff and the Partnership and Authority need not worry about payroll taxes, insurance, vacation time, or sick leave.

The court notes there are some elements of the working relationship between Wilde and the Authority that, when looked at alone, seem to indicate an employer employee relationship. For example, Wilde performed an array of services for the Partnership and Authority for more than two years. On balance, however, the relationship is more accurately characterized as employer and independent contractor. The court, considering the working relationship as a whole, concludes that Wilde is a self-employed business owner who provided services to the Partnership and Authority as an independent contractor. Accordingly, she cannot maintain an action under Title VII.[7]

### 3. Section 1983 Claim

Section 1983 of Title 42 creates no substantive rights, but provides only a remedy when rights secured by federal law or the Constitution are deprived under color of state law. *Lugar v. Edmondson*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). In reviewing a dismissal for failure to state a claim, the court accepts the allegations in the complaint as true. In her first cause of action, Wilde alleged:

> By maintaining and allowing a hostile work environment, by terminating Caryn Wilde's employment, by refusing to deal with Caryn Wilde, by terminating her lease, by sexually harassing and by retaliating against her on account of her gender, her opposition to sexual harassment and her exercise of her rights guaranteed by Amendment XIV of the U.S. Constitution and Minnesota law, and by failing to properly train their individual employees and supervisors, Defendants have violated 42 U.S.C. § 1983.

Read liberally, Wilde's complaint raises four claims. First, she alleges that the defendants violated her rights under Title VII. Second, she insists that the defendants violated her rights under the Fourteenth Amendment by terminating her employment. Third, Wilde claims that the defendants retaliated against her for obtaining the restraining order by terminating the lease between the Partnership and Authority and Executive Suites, contrary to her First Amendment rights. Fourth, Wilde contends that the defendants' failure to properly train their employees and supervisors violated her constitutional rights.

Wilde cannot maintain a section 1983 claim based on alleged violations of Title VII. As discussed above, Wilde is an independent contractor not protected by Title VII. Even if Wilde had stated a claim

---

7. The court's determination that Wilde is not an employee under Title VII makes it unnecessary to decide other Title VII issues raised by the parties' motions.

under Title VII, she cannot ground her section 1983 claim on an alleged deprivation of rights created by Title VII. *See Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir.1987) ("Title VII provides a comprehensive remedial system for the enforcement of rights created by Title VII."). Thus, it is clear that no set of facts which could be proven consistent with the allegations in the complaint would entitle Wilde to relief under section 1983 against Croonquist. To the extent Wilde's section 1983 claim seeks to enforce Title VII, it fails to state a claim against any of the defendants as a matter of law.

Wilde did not allege that an official County policy violated her rights guaranteed by the Constitution. Her complaint is also devoid of any specific facts indicating the existence of such a policy. The County makes a strong argument that Wilde's section 1983 claim cannot withstand an attack under Rule 12(b)(6). Under the generous standard governing dismissal, however, the court reads Wilde's claim as alleging that she was injured by official action. Therefore the court proceeds to address the remainder of Wilde's section 1983 claim on the merits.

■■■ Wilde does not state a property claim cognizable under section 1983 of 42 U.S.C. against any of the defendants as a matter of law. The Fourteenth Amendment forbids state actors to "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to maintain a due process claim, Wilde must point to specific facts which, if proven, would establish that defendants deprived her of a constitutionally protected property or liberty interest. *Board of Regents v. Roth*, 408 U.S. 564, 569–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972).[8] The Fourteenth Amendment

creates no property interests; it only extends procedural safeguards to property interests "a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. Both the lease and Wilde's services were terminable at the will of either party. She had no formal or implied contractual security in a continued relationship with the Partnership or Authority. While Wilde surely had a concern in working for the Partnership and Authority, she did not have a property interest sufficient to trigger due process rights.

■■■ A local government entity, like the County, is liable under section 1983 only if an official policy or custom caused a violation of Wilde's constitutional rights. *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978).[9] The County cannot be subject to vicarious liability under section 1983; it cannot be liable *"solely* because it employs a tortfeasor." *Id.* (emphasis in original). To avoid summary judgment, Wilde must produce evidence sufficient to show a County policy or custom violated her constitutional rights. Wilde has failed to make the requisite showing.

■■■ The evidence before the court shows the following facts. The Kandiyohi Sheriff provided Wayne Thompson ("Thompson"), the County Coordinator for Kandiyohi County, with a courtesy copy of the restraining order against Croonquist. Thompson called John Anderson ("Anderson"), the president of the Partnership and Authority, who is a personal friend. Anderson told Thompson that the Board of Directors of the Partnership and Authority ("Board") would meet to discuss the harassment order and asked Thompson to attend. Thompson attended the meeting as a favor to Anderson. Thompson agreed to pick up mail for Croonquist and answer

---

**8.** Wilde does not allege the defendants harmed her reputation or imposed a stigma that forecloses her freedom to take advantage of other employment opportunities. Thus, no constitutionally protected liberty interest is implicated here. *Roth*, 408 U.S. at 573–74, 92 S.Ct. at 2707.

**9.** Local governments may also face liability under section 1983 for actions taken by govern-

ment officials who have final policymaking authority. *St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988). However, Wilde did not plead, much less establish for purposes of summary judgment, that Croonquist or any other person was a policymaker for the County under section 1983.

telephone inquiries while he was restrained from entering the office at the Executive Suites. The Authority terminated its oral lease with Executive Suites on April 30, 1992, after giving 30 days notice.

The rest of Wilde's claim is based on allegations that: (1) at its meeting on February 11, 1992, the Board ordered its members not to communicate with Wilde but permitted them to communicate with Croonquist; (2) the Board decided at that meeting to terminate its lease with Executive Suites and action was taken to retaliate against Wilde for obtaining a restraining order against Croonquist; (3) the actions of the Board established an official policy for dealing with her; (4) the policy violated her First Amendment rights; and (5) the policy adopted by the Board is attributable to the County because Thompson attended the meeting. Wilde has produced no specific facts to support these contentions.

Wilde speculates that the defendants acted under the color of state law to deprive her of constitutional rights. Mere suspicion and conjectural assertions, however, are not enough to withstand summary judgment. *Gregory v. The City of Rogers, Arkansas,* 974 F.2d 1006, 1010 (8th Cir. 1992). Wilde has not made any showing that a County custom or policy violated her constitutional rights. There is no evidence whatsoever that the County had a policy, official or otherwise, for retaliating against persons who obtain restraining orders. Without a showing of an official policy or custom that caused the alleged constitutional violations, Wilde's section 1983 claims must fail.

Even if Wilde had provided a factual basis for an official custom or policy, she failed to produce sufficient evidence to support her failure to train claim. To hold the County liable for failing to prevent misconduct by employees, Wilde must show that the County's "failure to train its employees in a relevant respect evidences a deliberate indifference" to the rights of Wilde. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). Wilde must establish that the County either knew Croonquist was harassing her or other knew Croonquist was harassing her or

had notice its procedures were inadequate and likely to result in a violation of constitutional rights. *Id.* at 396, 109 S.Ct. at 1208 (O'Connor, J., concurring); *Thelma D. v. Board of Educ. of the City of St. Louis,* 934 F.2d 929, 935 (8th Cir.1991). Wilde provided no evidence that the County knew of Croonquist's misconduct prior to his arrest or was aware of any shortcomings in its training programs. Wilde's failure to train claim cannot survive the County's motion for summary judgment.

4. Wilde's State Law Claims

The court has discretion to consider Wilde's state law claims under the doctrine of supplemental jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The court declines to exercise supplemental jurisdiction over Wilde's state law claims because it has dismissed the federal law claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139 ("[Supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right.... if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). The court dismisses Wilde's state law claims without prejudice.

CONCLUSION

The court declines to abstain in favor of the pending state court declaratory judgment action. The court concludes that the defendants are entitled to summary judgment on Wilde's Title VII and section 1983 claims. The court, as a matter of discretion, dismisses Wilde's state law claims.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The County's motion to abstain is denied.

2. The court orders the County to pay Wilde $500 in attorney's fees pursuant to Local Rule 7.1(d).

3. Wilde's Title VII claim is dismissed pursuant to Rule 56(c) of the Federal Rules of Civil Procedure; and

4. Wilde's claim asserted under 42 U.S.C. section 1983 is dismissed pursuant to Rules 12(b)(6) and 56(c) of the Federal Rules of Civil Procedure; and

5. Wilde's state law claims are dismissed without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.