## In the Matter of the Estate of TOM DE CHIARO, Deceased.

Surrogate's Court, Nassau County, July 16, 1962.

*Lipton & Silverstein* for petitioners. *Jacob Nudell* for Rose Crescenzo, respondent. *Moore & Goldberg* (*H. Bradley Moore* of counsel), for Rosalie Seaman and others, respondents. *Murphy & Maguire* (*George J. Maguire* of counsel), for Rosalie Seaman and others, as committee, respondents. *Brenner & Geiler* (*Harry C. Brenner* of counsel), for Mildred Pedersen, respondent. *Louis J. Lefkowitz, Attorney-General* (*Francis M. Savastano* of counsel), for Creedmoor State Hospital. *Monroe Fink* for New York Tax Commission. *Leon Korschenbaum* for New Amsterdam Casualty & Surety Co.

JOHN D. BENNETT, S. The petitioners in this accounting proceeding have moved to dismiss objections 2, 21 and portions of 3, on the ground that they relate to matters " released or compromised ".

The objections sought to be dismissed relate generally to the alleged failure of the petitioners to account for an additional 49% stock interest of the decedent in five corporations in which he was interested during his life.

Two prior proceedings, one to remove the administrators, both sons of the decedent, and another for advice and direction as to the sale of the corporate stock of two of the five corporations, together with the resultant settlement and discontinuance, are said to preclude the respondents from now questioning the ownership of 49% of the corporate stock of the five corporations by four of the decedent's sons with whom he was engaged in these various enterprises.

Essentially, the position urged by the petitioners concerns a consideration of the application of *res judicata* or, more specifically, since this proceeding is not the same type of proceeding as the two former, that form of *res judicata* referred to as collateral estoppel (*Commissioners of State Ins. Fund* v. *Low*, 3 N Y 2d 590, 595).

Extending the question further, there is the consideration of a discontinuance or withdrawal of one of the proceedings and a consent decree entered in the advice and direction proceeding terminating the litigation, and the consequent effect upon the issues presently raised (see Ann. Consent Judgment As Res Judicata, 2 A. L. R. 2d 514).

Generally speaking, where a question of fact essential to a judgment is actually litigated and determined, the determination is conclusive between the parties and their privies in a subsequent action, even though such action involves a different cause of action (*City Bank Farmers Trust Co.* v. *Macfadden,* 13 A D 2d 395, 400). "The inquiry, therefore, is, was the issue before the court here actually litigated and determined by the judgment in the prior action" (*City Bank Farmers Trust Co.* v. *Macfadden, supra,* p. 400).

Although this is generally not an easy task to determine in a contested proceeding (i.e., what was actually litigated), it becomes an increasingly more difficult problem when the court is faced with a consent decree which may go beyond the issues presented in the pleadings, and upon which pleadings there may have actually been no litigation. In any event, the application of the doctrine of collateral estoppel has been termed by the Court of Appeals as elusive and difficult in every case (*Commissioners of State Ins. Fund* v. *Low, supra*).

There is no question, however, that in New York State a consent decree is just as conclusive and binding on the parties as one rendered after a contest (*Crouse* v. *McVickar,* 207 N. Y. 213; *Canfield* v. *Harris & Co.,* 252 N. Y. 502; *Matter of Millington,* 188 Misc. 469, 473).

A reading of the petition in the revocation proceeding reveals that the petitioners, two of the present respondents, on page 3 referred to two of the corporations in which the decedent owned " at least 51% of the issued and outstanding stock." Again on page 7 appears the following: "During the eight months following decedent's death the corporate assets and properties of three other corporations in which decedent owned 51% of the issued and outstanding stock namely, Prima Concrete Construction Corp., Melville Construction Corp. and Glen Cove Construction Corp."

At or about the same time of the two previous proceedings, an accountant's report dated January 26, 1957, concerning the decedent's assets was circulated among the respondents or their attorneys. The report refers at various points to the corporations " in which the estate has a 51% capital interest."

Exhibit 16, the petition for advice and direction, alleges that the petitioners already own 49% of the stock of two of the corporations. None of the respondents saw fit in that proceeding to deny that allegation, and, specifically in an answer filed by one of the respondents, Rose Crescenzo, no mention of such allegation of ownership is made.

The report on behalf of the committee of the incompetent, Jennie De Chiaro, is however illuminating as to the actual surrounding circumstances of the settlement. In such report the attorney for the committee refers to the allegation that four of the five sons of the decedent claim ownership of 49% of the corporate stock of two of the five corporations then being considered. Not only is the allegation discussed, but the report is given of an actual examination of the stock certificates issued to the sons representing in the aggregate 49% of the corporate stock of Nassau and Five Brothers. The attorney concludes that in his opinion the four sons mentioned own 49% of the corporate stock of the two corporations involved.

While in the papers no direct claim is made of a lack of disclosure or other overreaching, the following statement is significant: "In view of the fiduciary relationship of Alphonse De Chiaro it was necessary to carefully examine the proposed sale to determine its fairness to the estate and to Jennie De Chiaro, said incompetent person."

On December 18, 1957, the interested parties appearing by their respective counsel, stipulated in open court that a decree in the advice and direction proceeding was to be submitted without objection, and that its form had been agreed upon. The petition for revocation of letters was withdrawn at the same time. Finally, the decree did not only make reference to an approval of the sale of 51% of the stock of Nassau and Five Brothers, but provided that upon the closing of the transaction the administrators should be relieved from any and all liability with respect to the two corporations, their responsibility being limited solely to an accounting of the proceeds.

While the court is aware of the fact that an explicit compromise agreement detailing all the ramifications of the settlement between the parties was not executed, it would be an injustice not to recognize that the circumstances surrounding this settlement mark it as a compromise of a family dispute regarding the ownership of these corporations, and a settlement of the parties' differences between them relating thereto.

An excellent statement of the test that must be applied is stated as follows: "As a general proposition, the true criterion for determining the scope of an estoppel created by a consent

judgment is the intention of the parties as gathered from all the circumstances and, in particular, from the terms of the agreement upon which the judgment is based." (2 A. L. R. 2d 544.)

In a similar and related vein, Freeman, Judgments (vol. 2, § 664, pp. 1399–1400) states as follows:

"But irrespective of any effect given it as res judicata, a judgment by consent is regarded as in the nature of a contract or binding obligation between the parties thereto, which neither, in the absence of fraud or mistake, has the right to set aside or disregard, and which as against each is a waiver of errors and irregularities; and when such consent judgment embraces matters or extends to relief not involved within nor responsive to the issues in the case, it, with respect to such matters and relief, no doubt partakes more of the character of a voluntary agreement between the parties than of a judgment of the court determining a controversy between real litigants. Under such circumstances the judgment is conclusive even though it would have been void had it been the result of a contest because it went beyond the case made by the pleadings."

Unquestionably, as appears from the papers, the conferences and discussions had before the court brought up the question of the ownership of the 49% interest in these corporations by the sons. The respondents urge that only a limited and superficial significance be given to the decree which attempted to solve their differences with relation to these corporations. Such a holding would tend only to a weakening of the effectiveness of consent decrees in general. Certainly in this court general formal compromises of far-reaching importance are precipitated many times by the initiation of a seemingly insignificant proceeding.

On all the evidence adduced, the cross motion is granted and the objections 2, 21 and portions of 3 are dismissed. The decision on the motion to examine by written interrogatories, which has been held in abeyance, is apparently at this point academic in view of the decision on the cross motion. Accordingly, no further determination of that motion is now made.