**In re Blanca CARRERO, Debtor.**

**Albert James FIZZINOGLIA, Plaintiff,**

**v.**

**Blanca CARRERO, Defendant.**

**Bankruptcy No. 88 B 10166 (PBA).**
**Adv. No. 88–5322A.**

United States Bankruptcy Court,
S.D. New York.

Dec. 14, 1988.

As Amended Dec. 16, 1988.

D'Agostino & D'Agostino, White Plains, N.Y., by Stephen Medina, for Albert James Fizzinoglia.

Ralph H. Zucker, Mohegan Lake, N.Y., for debtor.

MEMORANDUM DECISION AND ORDER DENYING REQUEST FOR ENTRY OF DEFAULT JUDGMENT

PRUDENCE B. ABRAM, Bankruptcy Judge:

On April 5, 1988, Albert James Fizzinoglia ("Creditor") initiated this adversary proceeding seeking to have a debt (the "Debt") of $2,008.50 declared to be non-dischargeable under Bankruptcy Code § 523(a)(6). The Debt is based on a consent judgment against the Debtor, Blanca Carrero ("Debt-

or"), obtained in an action for malicious prosecution of a paternity action brought by the Creditor against the Debtor. The Debtor failed to file a timely answer in this adversary proceeding. The Creditor has sought the entry of a default judgment in his favor which the Debtor opposed.

For the reasons set forth below the court denies the Creditor's request for the entry of a default judgment.

## FINDINGS OF FACT

The Creditor and the Debtor have been engaged in litigation with each other since 1975. On September 6, 1975, the Debtor gave birth to a daughter ("First Child"). In December 1975, the Debtor brought a paternity action against the Creditor alleging that he was the father of the First Child. An order of filiation adjudging the Creditor to be the father of the First Child was entered by the Family Court in March, 1977. A direction for the payment of child support by the Creditor followed.

On or about February 10, 1982, the Debtor commenced a second paternity action against the Creditor alleging that he was the father of a son ("Second Child") to whom the Debtor had given birth on October 16, 1981. On February 24, 1982 the Family Court ordered the Debtor, the Creditor and the Second Child to submit to a blood test. A blood grouping test was performed on March 29, 1982 at a recognized testing center in New York City. A report of the results dated March 31, 1982, showed that there were multiple exclusions of paternity. As a result of the report on June 17, 1982, the Family Court entered an order dismissing the Debtor's action for failure to prove a *prima facie* case.

Thereafter in October 1982, the Creditor commenced an action for malicious prosecution (the "Malicious Prosecution Action") against the Debtor in the Supreme Court of the State of New York. The verified complaint alleged that the paternity action regarding the Second Child which had terminated in the Creditor's favor was initiated by the Debtor without justification or probable cause and had caused him to suffer severe mental and emotional distress. The complaint sought damages in the amount of $50,000.

The Debtor failed to file an answer to the malicious prosecution complaint. The Creditor had a default noted. The Debtor failed to appear at the inquest on the amount of damages which was held in early March 1983. The Creditor testified at the inquest that he had not had sexual relations with the Debtor during the relevant period for conception. He also testified as to the type of damages he suffered from the commencement of the paternity action respecting the Second Child. The judge directed entry of a default judgment in the amount of $18,000.

In early May 1983, the Debtor moved to have the default judgment set aside. By order dated July 28, 1983, the motion was granted and the Debtor was directed to serve an answer within 20 days. Thereafter, the Debtor timely served a verified answer with a counterclaim. The answer set forth the history of the relationship between the parties including the 1977 order of filiation with respect to the First Child and alleged that the Debtor had had probable cause for initiating the paternity action with regard to the Second Child. The counterclaim appears to have been one for malicious prosecution against the Creditor for an action he had initiated in the Family Court to have the default judgment award setoff against his support obligation for the First Child.[1]

The trial was fixed to begin on May 15, 1985. On that date and after a jury had been selected, the case was settled. The Debtor withdrew her counterclaim and stipulated to the entry of a judgment against herself in the amount of $1,500 plus $508.50 costs and disbursements (the "Consent Decree"). This amount is approximately the actual out-of-pocket cost to the Creditor for his attorney's fees and the

---

1. It appears that the Creditor's action was discontinued after the default judgment was set aside.

blood test in the paternity action respecting the Second Child.

The Debtor did not pay the judgment and the Creditor was unsuccessful in his pre-petition attempts to execute on the judgment. On January 15, 1988, some 2½ years after entry of the judgment, the Creditor served a subpoena to take the deposition of the Debtor for the purpose of discovering employment information. On January 26, 1988 and before the return date of the subpoena, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code.

The Debtor's schedules list $14,266.71 in unsecured debts due to 10 creditors. Some of the debts, including that to the Creditor, are stated to be disputed. In her schedule of current income and expenditures, the Debtor reflects biweekly gross pay of $656.80. In addition, she receives $185 monthly from the New York Army National Guard and the $110 in child support for the First Child.

The Creditor timely commenced this dischargeability adversary proceeding in April 1988 and effected service of the summons and complaint by mail. The Debtor did not file an answer within the prescribed time. The Debtor did appear *pro se* at the scheduled pre-trial conference on May 12, 1988. The Debtor's excuse for not filing an answer was that she did not have an attorney. The Debtor also claimed that she had only entered into the Consent Decree to avoid increasing legal fees, that she would not have entered into the Consent Decree if it had meant admitting malicious prosecution of the paternity action respecting the Second Child, and further charged that the Creditor had somehow manipulated the outcome of the blood test.[2] Because the Debtor's appearance indicated that the Debtor did not intend to default and the Debtor

raised issues suggesting that she might have a meritorious defense, the court adjourned the pretrial, but gave the Creditor permission to file a motion for default judgment. The Creditor thereafter filed a motion seeking entry of a default judgment. On the return date of that motion, the Debtor appeared with counsel and submitted an answer to the complaint. Thereafter the matter was briefed by the parties and taken under advisement by the court.

## DISCUSSION

█ The question for the court is whether it should enter a default judgment in the Creditor's favor. Bankruptcy Rule 7055(c), which mirrors the Federal Rules, provides that the court may set aside an entry of default "[f]or good cause shown." Good cause under the Federal Rules has been defined by the Second Circuit to include three criteria: (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) and whether a meritorious defense has been presented. *Meehan v. Snow*, 652 F.2d 274 (2d Cir. 1981). The decision is committed to the discretion of the court. *Marziliano v. Heckler*, 728 F.2d 151 (2d Cir.1984). The defaulting party need not conclusively establish the validity of the defenses asserted, *Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983), but the allegations must contain a suggestion which if proven at trial would constitute a complete defense. *Keegel v. Key West & Caribbean Trading Company, Inc.*, 627 F.2d 372 (D.C.Cir.1980).

The Creditor asserts that the Debt based on the Consent Decree is, *per se*, a non-dischargeable debt under Code § 523(a)(6),[3] which excepts from discharge any debt for willful and malicious injury caused by the debtor.[4] If the Consent Decree has this

---

**2.** Specifically, she stated that she had had to leave the test room with the Second Child so he could use the bathroom and that the Creditor's blood had been drawn while she was absent.

**3.** Code § 523 states in relevant parts:
"(1) A discharge under section 727 * * * does not discharge an individual debtor from any debt
.    .    .    .    .

"(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

**4.** The potential results from a paternity action have been considered interference with the person or property similar to that incurred by use of a provisional remedy.
"The drastic consequences of a paternity proceeding warrant an action for malicious pros-

effect, then the Debtor would be unable to show a meritorious defense and the default should not be set aside.

Consent judgments have the nature of both formal judgments on the merits and contracts between the parties. *See Prudential Lines Inc. v. Firemen's Insurance Co. of Newark, New Jersey*, 91 A.D.2d 1, 457 N.Y.S.2d 272 (1982) (a consent judgment is similar to any formal judgment and is binding on the parties); *Town of Oyster Bay v. Forte*, 314 Misc.2d 5, 219 N.Y.S.2d 456 (1961) ("A consent judgment is merely an agreement of the parties entered upon the record with the sanction and approval of the court.").[5] The New York Court of Appeals has held that a consent judgment is "a conclusive adjudication of all the matters embraced in it and a bar to any subsequent action on the same claim." *Canfield v. Harris & Co.*, 252 N.Y. 502, 170 N.E. 121 (1930). Plainly then, the Consent Decree has *res judicata* effect.

However, the question is not what *res judicata* effect is to be given to the Consent Decree since the present action is not the same cause of action as the prior action. See *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Rather the issue is what, if any, collateral estoppel effect should be given to the Consent Decree in determining the issues raised by this dischargeability action under the Bankruptcy Code.

■ This court finds that the Consent Decree has no collateral estoppel effect in this action. Compare *In re Joseph*, 22 B.R. 319 (Bankr.E.D.N.Y.1982) (A default judgment does not give rise to collateral estoppel) and *In re Iannelli*, 12 B.R. 561 (Bankr.

S.D.N.Y.1981). The elements of the test for application of collateral estoppel are:

(1) The issue sought to be precluded must be the same issue as that involved in the prior action;

(2) The issue must have been actually litigated;

(3) The issue must have been determined by a valid and final judgment; and

(4) The determination must have been essential to the final judgment.

See *In re Spector*, 22 B.R. 226, 231 (Bankr. N.D.N.Y.1982). The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in a prior action. See *Kaufman v. Eli Lilly and Company*, 65 N.Y.2d 449, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985).

The Debtor carries her burden by showing that the prior judgment was by consent. Where a bare judgment is by consent, nothing has been litigated for collateral estoppel purposes. In a consent judgment the parties may agree to relief broader than that the court could have awarded after trial. See, e.g., *International Association of Firefighters, supra*, 106 S.Ct. at 3077. Thus, since the Debtor could agree to pay the Creditor's expenses for the second paternity action even though not legally obligated to do so, her agreement to do so in the form of the Consent Decree is not an admission of liability on the merits of the Malicious Prosecution Action.

"[T]here are * * * persuasive policy reasons for denying collateral estoppel sta-

---

ecution where there is lack of probable cause and malice. Although neither imprisonment nor a fine is authorized, it does result in an order of filiation and a direction for support, with the sanction of imprisonment if support is not provided. There is manifest interference with person and property and obvious injury to person and a certain moral obloquy, involving defamation and damage to reputation." *Watson v. City of New York*, 57 Misc.2d 542, 293 N.Y.S.2d 348 (1968).

**5.** *See also Local Number 93, International Association of Firefighters, AFL–CIO C.L.C. v. City of*

*Cleveland*, 478 U.S. 501, 519, 106 S.Ct. 3063, 3074, 92 L.Ed.2d 405 (1986) (A consent decree entered in litigation under a federal statute bears some of the earmarks of judgments and also closely resembles contracts. They are similar to judgments because they are entered as a judgment and the court retains power to modify them over the objections of a signatory. The consent decree is similar to a contract because the terms are arrived through mutual agreement of the parties.).

tus to consent decrees. The societal interest in reducing instances of costly litigation is undermined by a rule which provides drastic consequences for settlements. One will tend to avoid a settlement rather than be later bound in potentially far-reaching, and often unintended, ways by facts imbedded in an otherwise innocuous settlement agreement. Because the application of the doctrine of collateral estoppel to consent judgments will in many cases be unforeseeable, consent judgments may become less desirable, thus impeding and embarrassing the settlement process. As Professor James puts it: 'Any rule which tends to assure contest rather than compromise * * * probably tends, on balance, to increase rather than decrease litigation.' "Moreover, refusing to construe consent judgments as adjudicating the issues joined therein will not threaten any legitimate expectations of repose, since none of the parties to the consent judgment ever bargained for such protection. Nor will a rule giving collateral estoppel effect to consent judgments promote judicial consistency, since the judges are not deciding anything." *American Mutual Liability Insurance Co. v. Michigan Mutual Liability Co.*, 64 Mich.App. 315, 235 N.W.2d 769, 91 ALR 3d 1159, 1167 (Ct.Appeals 1975).

See also Anno., Modern Views of State Courts as to Whether Consent Judgment is Entitled to Res Judicata or Collateral Estoppel Effect, 91 ALR 3d 1170; and *In re DeChiaro's Estate*, 35 Misc.2d 485, 230 N.Y.S.2d 604 (1962).[5A]

 The court has also considered whether the Debtor has offered a meritorious defense aside from objecting to the use of the Consent Judgment. This court concludes that the Debtor has raised issues which, if proven at trial, would preclude judgment in the Creditor's favor for malicious prosecution and has thus offered a meritorious defense. The Debtor has consistently maintained the Creditor had access while the Creditor has denied it. No court has ever adjudicated the issue of whether the Creditor had access during the period of possible conception of the Second Child. The proof on this issue, which must include assessment of the credibility of the Debtor and the Creditor, is crucial to a determination of whether the Debt is the result of a willful and malicious injury. Through discovery the Debtor may be able to develop facts which would bolster her credibility, including facts supporting her argument that the Creditor somehow manipulated the blood test.[6]

The Debtor's default will be set aside and the Creditor's motion for a default judgment denied.

A pretrial conference is fixed for January 25, 1989 at Noon.

It is so ordered.

**5A.** This court views its holding as entirely consistent with the Second Circuit's decision in *Kelleran v. Andrijevic,* 825 F.2d 692 (1987). In *Kelleran,* the Second Circuit held that the bankruptcy court may not be used to relitigate issues already resolved in a court of competent jurisdiction. 825 F.2d 695. As the dissent makes clear, *Kelleran* is about the *res judicata* effect in the bankruptcy court of decisions by other forums. This court accepts the validity of the Consent Decree and accords it *res judicata* effect. However, since a state court would not accord collateral estoppel effect to the Consent

Decree, there is no reason for this court to do so.

**6.** In other words, a finding that the Debtor had probable cause for the commencement of the paternity proceeding respecting the Second Child would defeat the Creditor's dischargeability action because it would negate a required element of a cause of action for malicious prosecution. See generally, *Belsky v. Lowenthal,* 62 A.D.2d 319, 405 N.Y.S.2d 62, *aff'd* 47 N.Y.2d 820, 418 N.Y.S.2d 573, 392 N.E.2d 560 (1978).