_____

Nos. 96-1089/1117
_____

United States of America,          *
                                    *
     Appellant/Cross-Appellee,      *
                                    *     Appeals from the United
          v.                        *     States District Court for
                                    *     the District of Minnesota.
Lauree Flaa Brekke; James           *
Stanley Brekke,                     *
                                    *
     Appellees/Cross-Appellants.    *


_____

               Submitted:  June 11, 1996

                  Filed:  October 4, 1996
_____

Before BOWMAN, LAY, and LOKEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.


     Defendants Lauree Flaa Brekke and James Stanley Brekke were indicted
in federal district court in Minnesota on charges of bank fraud, making
false statements to a financial institution, mail fraud, and conspiracy to
commit mail fraud and bank fraud.  The District Court, adopting the report
and recommendation of a magistrate judge, dismissed the indictment, ruling
that an earlier settlement in a civil action in federal district court in
North Dakota precluded criminal prosecution.  At the same time, the
District Court held that the prior settlement did not collaterally estop
the government from relitigating the issues involved in the earlier action.
The United States appeals the District Court's dismissal of the indictment,
and the Brekkes cross-appeal the denial of their collateral estoppel
motion.  We reverse the dismissal of the indictment, affirm the denial of
the collateral

estoppel motion, and remand this case for reinstatement of the indictment.[1]

## I.

In 1990, Brekke Construction, Inc., a North Dakota corporation owned and controlled by the Brekkes,[2] obtained a $350,000 loan from Twin Valley State Bank of Twin Valley, Minnesota (Twin Valley).  The Brekkes executed personal guaranties of the loan and granted Twin Valley a mortgage on certain real estate to secure the guaranties.  The Brekkes and Twin Valley also applied for a guaranty from the federal Small Business Administration (SBA).  As part of the SBA application process, the Brekkes certified that they had pledged particular mortgage positions on particular properties as security for the loan.  When Brekke Construction defaulted on the loan and Twin Valley attempted to collect on the SBA's guaranty, the SBA discovered that the mortgage positions represented in the Brekkes' application were incorrect and that Twin Valley's security was subject to a number of undisclosed prior liens.  The SBA settled with Twin Valley, reserving the right to pursue Brekke Construction and the Brekkes for reimbursement.

In 1994, the SBA brought a civil suit against the construction company and the Brekkes in federal court in North Dakota.  United States v. Brekke Construction, Inc., Civil No. A3-94-80 (D.N.D. filed June 29, 1994).  In its amended complaint, the SBA alleged that the Brekkes made false and fraudulent representations to the

---

[1]The government's motion to strike portions of the Brekkes' reply brief is denied.

[2]The Brekkes have not provided us with their version of the facts underlying this case.  Accordingly, we have drawn our summary of the facts from the government's briefs and from the pleadings in the North Dakota and Minnesota cases.  Because these appeals turn on questions of law rather than questions of fact, the government's factual allegations are sufficient to set the scene.

SBA and conspired to defraud the United States. The SBA sought to recover from Brekke Construction and the Brekkes the SBA's actual losses and treble damages under the False Claims Act, 31 U.S.C. § 3729 (1994).

In November 1994, Brekke Construction, the Brekkes, and the SBA entered into a settlement agreement. In exchange for a payment of $130,000, the SBA agreed to dismiss the civil action with prejudice and to release all other claims against the Brekkes and their company. The settlement agreement stated in relevant part as follows:

> D. SBA, BREKKE CONSTRUCTION, JAMES and LAUREE further agree that this Settlement Statement and Mutual Release represents a compromise of disputed claims and that the payment provided for herein is not to be construed as an admission of liability as liability is expressly denied.
>
> . . . .
>
> G. . . . BREKKE CONSTRUCTION, INC., JAMES S. BREKKE, LAUREE A. BREKKE, and the UNITED STATES SMALL BUSINESS ADMINISTRATION, their employees, agents and assigns release and discharge each other from any and all claims, whether known or unknown, liquidated or contingent, that each presently has or which each may have against the other. The term "claims" includes, but not exclusively so, claims or causes of action for:
>
> > . . . .
> >
> > (11) Any other claim or cause of action of any kind, including any and all statutory or common law causes of action.
>
> . . . .
>
> L. SBA reserves the right of the United States to initiate legal action against other individuals not parties to this Settlement Statement and Mutual Release for recovery of the balance of the BREKKE CONSTRUCTION debt retained by SBA and not assigned under this agreement.

Settlement Statement and Mutual Release, Appellant's Appendix at 33, 37-39.

In August 1995, a federal grand jury in Minnesota began investigating the Twin Valley loan transaction for possible violations of federal law. The following month, the grand jury returned an indictment against the Brekkes and Rudell Oppegard, the president of Twin Valley.[3] The indictment charged the Brekkes with bank fraud in violation of 18 U.S.C. § 1344 (1994), making false statements to a financial institution in violation of 18 U.S.C. § 1014 (1994), mail fraud affecting a financial institution in violation of 18 U.S.C. § 1341 (1994), and conspiracy to commit bank fraud and mail fraud in violation of 18 U.S.C. § 371 (1994). Specifically, the grand jury charged that the Brekkes misrepresented Twin Valley's lien positions on their collateral; misrepresented that the loan proceeds would be used for working capital; and misrepresented that Twin Valley would not receive any benefit in connection with the loan, when in fact the Brekkes used $50,000 of the loan proceeds to purchase a certificate of deposit from Twin Valley in the name of "Edith Flaa."

The Brekkes moved to dismiss the indictment on several grounds. In December 1995, the District Court denied the Brekkes' motion to dismiss on collateral estoppel grounds but granted their motion to dismiss on res judicata grounds. These appeals followed.

We review de novo the District Court's decision on questions of law, including the application of res judicata, collateral estoppel, and the Double Jeopardy Clause. John Morrell & Co. v. Local Union 304A, 913 F.2d 544, 559 (8th Cir. 1990), cert. denied, 500 U.S. 905 (1991); United States v. McMasters, 90 F.3d 1394, 1401 (8th Cir. 1996).

---

[3]Mr. Oppegard pleaded guilty to conspiracy to commit bank fraud and mail fraud and is not a party to these appeals.

## II.

We must first consider whether we have jurisdiction over these appeals. Defendants argue that we lack jurisdiction, relying on the following language of 18 U.S.C. § 3731 (1994):

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information . . . except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

Section 3731 is designed to permit the government to appeal unfavorable orders in any situation in which the Double Jeopardy Clause does not prohibit an appeal. United States v. Wilson, 420 U.S. 332, 337-39 (1975); United States v. Brown, 481 F.2d 1035, 1040 (8th Cir. 1973). As a result, the government's authority to appeal and our jurisdiction to entertain the appeal are intertwined with the merits of defendants' double-jeopardy claim. We therefore agree with those courts which have held that we must consider the merits of the case to determine whether we have jurisdiction. See United States v. Martinez, 667 F.2d 886, 889 (10th Cir. 1981) (Lay, F. Gibson, and Bright, JJ., sitting by special designation), cert. denied, 456 U.S. 1008 (1982); United States v. Castellanos, 478 F.2d 749, 751 (2d Cir. 1973). Because we conclude below that a trial in this case would not violate the Double Jeopardy Clause, see Part IV of this opinion, infra, we have jurisdiction over the government's appeal. Cf. United States v. Frazier, 880 F.2d 878, 882 (6th Cir. 1989) (holding that government may appeal where district court dismisses indictment on collateral estoppel grounds), cert. denied, 493 U.S. 1083 (1990).

Having established our jurisdiction, we turn to the res judicata issue. The doctrine of res judicata, also known as claim preclusion, is designed to promote judicial economy by preventing litigants from bringing repetitive lawsuits based on the same cause of action. See Baptiste v. Commissioner, 29 F.3d 433, 435 (8th Cir. 1994), cert. denied, 115 S. Ct. 1251 (1995). Res judicata bars a party from asserting a claim in court if three requirements are met: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the decision was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases. Montana v. United States, 440 U.S. 147, 153 (1979); Headley v. Bacon, 828 F.2d 1272, 1274 (8th Cir. 1987). We have stated that a civil action may preclude a later criminal prosecution, but only if both actions are based on the same facts and both have punishment as their object. Dranow v. United States, 307 F.2d 545, 556 (8th Cir. 1962).

The government has raised a number of objections to the District Court's decision that the dismissal of the North Dakota civil suit bars the prosecution of this criminal action in Minnesota. We need not determine to what extent the two cases are based upon the same facts, nor must we decide whether the SBA, which was represented in the civil suit in North Dakota by a special assistant United States attorney, is in privity with the United States, represented here by the United States Attorney for the District of Minnesota. For two separate reasons, we find that the District Court erred in dismissing the indictment on res judicata grounds.

First, the civil action in North Dakota and this criminal proceeding in Minnesota do not involve the same cause of action. It is well established that the government may have both a civil and a criminal cause of action as a result of a single factual

situation.  See, e.g., United States v. Ursery, 116 S. Ct. 2135, 2140 (1996) (civil forfeiture actions and criminal prosecutions arising out of same conduct); United States v. National Ass'n of Real Estate Bds., 339 U.S. 485, 493 (1950) (civil and criminal actions for violation of Sherman Act); Helvering v. Mitchell, 303 U.S. 391, 397 (1938) (civil assessment for tax fraud and crime of tax evasion); Stone v. United States, 167 U.S. 178, 188-89 (1897) (civil conversion action and crime of unlawful removal of timber from government property).  In the North Dakota civil action, the SBA sought to recover its losses arising from the Twin Valley loan transaction; in the present criminal proceeding, the government seeks to punish defendants for their conduct.  These two cases serve different societal interests and could not have been joined in the same lawsuit, and we conclude that they involve different causes of action.[4]

Even if we were to assume that the two cases involved the same cause of action, we would reverse the District Court because the earlier civil case was not punitive within the meaning of Dranow.  Although the False Claims Act, 31 U.S.C. § 3729 (1994), authorizes treble damages, the Supreme Court has determined that "the Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages . . . ."  United States v. Halper, 490 U.S. 435, 446 (1989).  See also United States ex rel. Marcus v. Hess, 317 U.S. 537, 551-52 (1943) (recognizing that purpose of False Claims Act is to make government completely whole).  A multiple recovery of this

---

[4]Two cases from the Fourth Circuit involving facts similar to those in this case support our conclusion.  See United States v. Tatum, 943 F.2d 370, 381 (4th Cir. 1991) (holding that bankruptcy proceeding and prosecution for bankruptcy fraud are different causes of action); United States v. Mumford, 630 F.2d 1023, 1027 (4th Cir. 1980) (holding that action by SEC for prospective injunctive relief is distinct from prosecution for violation of securities laws), cert. denied, 450 U.S. 1041 (1981).

type is compensatory rather than punitive, even though it contains a penalty element, unless the amount sought by the government "bears no rational relation to the goal of compensating the Government for its loss . . . ." Halper, 490 U.S. at 449. In Halper, the Court recognized that "in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole." Id. We do not see how the treble-damages provision of the False Claims Act is different from the "ordinary case" discussed in Halper, and we hold that the North Dakota civil case was compensatory rather than punitive. See United States v. Field, 62 F.3d 246, 248 (8th Cir. 1995) (compromise for less than amount claimed is not punitive); United States v. Barnette, 10 F.3d 1553, 1559-60 (11th Cir.) (3.2-to-1 ratio of recovery to actual damages is not punitive), cert. denied, 115 S. Ct. 74 (1994).[5] As a result, the North Dakota civil case does not create a bar to the present action. Dranow, 307 F.2d at 556.

## IV.

Although the District Court did not rely on the Double Jeopardy Clause in dismissing the indictment, both parties have addressed the applicability of that clause to the present action. We hold that a criminal trial of defendants on remand would not constitute double jeopardy. The Double Jeopardy Clause protects an accused from three abuses: "a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." Halper, 490 U.S. at 440. Because defendants have not previously been acquitted or convicted of any crime in connection with the Twin Valley transaction, they must rely on the multiple-punishment

---

[5]In contrast, the Court in Halper found that another provision of the False Claims Act authorizing a recovery more than 220 times greater than the government's actual loss was punitive as applied. Halper, 490 U.S. at 439.

element of double jeopardy.  We have already determined above that the North Dakota civil action was not punitive in nature.  Therefore, any punishment defendants may suffer as a result of this criminal proceeding would be their first punishment, not their second.  In other words, since defendants have not yet been in jeopardy, a criminal trial in this case cannot constitute double jeopardy.  See Serfass v. United States, 420 U.S. 377, 393 (1975) (explaining that accused must suffer jeopardy before he can suffer double jeopardy).  Cf. Ursery, 116 S. Ct. at 2147 (recognizing that because civil forfeiture is not punitive, it cannot be ground for double jeopardy).

## V.

Next we consider defendants' contention that collateral estoppel precludes the government from pursuing this prosecution.  The doctrine of collateral estoppel, or issue preclusion, provides that when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit.  Ashe v. Swenson, 397 U.S. 436, 443 (1970); United States v. Bailey, 34 F.3d 683, 688 (8th Cir. 1994).  A criminal defendant may assert the issue-preclusive effect of a prior civil action.  Yates v. United States, 354 U.S. 298, 335 (1957), overruled in part on other grounds by Burks v. United States, 437 U.S. 1 (1978).  In their appeal, however, defendants have not identified which factual issues they believe have been established in the North Dakota civil case.  The SBA made no factual concessions in its settlement agreement with defendants, and the only fact contained in the judgment of dismissal is that the parties stipulated to the dismissal of the civil action.  United States v. Brekke Construction, Inc., Civil No. A3-94-80, Judgment (D.N.D. Nov. 8, 1994).  Because many settlements involve a similar pattern, the general rule is that a consent judgment has no issue-preclusive effect unless it is clearly shown that the parties intended to foreclose a particular issue in future

litigation.  See 18 Charles A. Wright et al., Federal Practice and Procedure § 4443, at 382-83 (1981); Restatement (Second) of Judgments § 27 cmt. e (1982).  Since no issues have been foreclosed in this case, the District Court properly denied defendants' motion to dismiss on collateral estoppel grounds.

## VI.

Finally, defendants argue that in the settlement agreement, the SBA not only released them from civil liability for the Twin Valley transaction but also agreed, on behalf of the United States, not to prosecute them criminally.  The Magistrate Judge, in his report adopted by the District Court, agreed with defendants.  First, the Magistrate Judge found that a review of the complaint and settlement in the civil action created an ambiguity as to which government agencies were bound by the settlement. Report and Recommendation at 13.[6]  Under the impression that he was required to interpret the ambiguity against the government, the Magistrate Judge concluded that the United States was bound.  Id.  As to the nature of the claims released, the Magistrate Judge found that "it is clear from the settlement agreement that the parties intended a global settlement of all claims," including criminal prosecution.  Id.

The interpretation of a contract, including determining whether it is ambiguous as written, is a question of law which we review de novo. International Union of Operating Eng'rs Local 571 v. Hawkins Constr. Co., 929 F.2d 1346, 1348 (8th Cir. 1991); John Morrell & Co., 913 F.2d at 550.

---

[6]The Magistrate Judge discussed the SBA's intent to release claims in his analysis of the res judicata issue.  We have determined above that res judicata is inapplicable here, but we believe that whether the SBA agreed not to prosecute defendants is a separate issue of contract interpretation.

-10-

We assume for the purpose of these appeals that the United States and all its agencies and instrumentalities are bound by the settlement agreement.[7] Nevertheless, we conclude that the settlement agreement did not relieve defendants of criminal responsibility for their actions. Nowhere in the agreement did the parties mention crimes, criminal actions, prosecution, or similar concepts. Indeed, the only language in the agreement on which defendants can possibly hope to rely is the catch-all release of "any or all statutory or common law causes of action." Yet this general language is necessarily qualified by the specific language which precedes it, unless there is evidence of what the parties actually intended by the general language. See United States v. Mexico Feed & Seed Co., 980 F.2d 478, 485 n.6 (8th Cir. 1992). Each of the claims specifically released by the parties is a civil claim, including contract, tort, warranty, defamation, contribution, and similar claims. Nothing in the record is to the contrary; defendants did not even allege in their motions before the District Court that they subjectively believed that they were negotiating for a non-prosecution agreement. Because the contractual language is not reasonably susceptible of the meaning proposed by defendants, we conclude that the settlement agreement is unambiguous. See John Morrell & Co., 913 F.2d at 551. The settlement agreement poses no obstacle to the present prosecution.

---

[7]We do, however, reject the Magistrate Judge's conclusion that Margalli-Olvera v. INS, 43 F.3d 345 (8th Cir. 1994), required him to interpret ambiguities against the government. Margalli-Olvera involved a plea agreement in a criminal case, and we noted that the application of ordinary contract principles in that case was "tempered by the constitutional implications of a plea agreement." Id. at 351. No such constitutional significance is present in the civil action involved here, and we conclude that ordinary principles of contract interpretation apply. In particular, because the record reflects that the settlement agreement was jointly drafted, neither party should receive the benefit of any ambiguity. The point is moot in this case; as discussed in the text of this opinion, we hold that the settlement agreement is unambiguous.

**VII.**

The judgment of the District Court is reversed, and the case is remanded to the District Court for reinstatement of the indictment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.