Clifton COATES and Nancy
Hunter, Plaintiffs,

v.

Henry C. KELLEY, Stephanie D. Kelley,
and John J. Flake, Defendants.

No. LR–C–96–525.

United States District Court,
E.D. Arkansas,
Western Division.

Feb. 27, 1997.

---

**15.** Docket No. 1.

Luther Oneal Sutter, Little Rock, AR, for
Clifton Coates and Nancy Hunter.

John W. Fink, Jack, Lyon & Jones, P.A., Little Rock, AR, for Henry C. Kelley.

## ORDER GRANTING MOTION
## TO DISMISS

EISELE, District Judge.

Before the Court is Defendant Henry C. Kelley's Motion to Dismiss. Plaintiffs have responded to Defendant Kelley's Motion, and the Court has reviewed the submissions of the parties. For the reasons set forth in this Order, the Court will grant the Motion.

### I

### Background

This case revolves around the alleged lack of accommodations for disabled individuals at the United Artists Theatre Circuit's (hereinafter "UATC's") Cinema City movie theater in Little Rock's Breckenridge Village Shopping Center. On July 10, 1996, Plaintiffs filed the instant suit, and, on August 26, 1996, they amended their original complaint to name the current defendants, each of whom owns, apparently along with other unnamed individuals, a partial undivided interest in the real estate under the UATC Cinema City complex.

In their Amended Complaint, Plaintiffs assert that Defendants have failed to require their tenant to make certain readily achievable changes to the architecture of the Cinema City theater in violation of Title III of the Americans with Disabilities Act of 1990 (hereinafter the "ADA") and the Arkansas Civil Rights Act of 1993 (hereinafter the "ACRA"). Plaintiffs indicate that Defendants should have required their tenant to install a raised toilet seat; to install full-length bathroom mirrors; to rearrange toilet partitions to increase maneuvering space; to reposition paper towel dispensers in bathrooms; to reposition public telephones; to rearrange tables, chairs, vending machines, display racks, and other furniture to make routes accessible; to reposition shelves; to rotate films "between accessible locations"; to provide adequate and accessible parking; and to provide "accessible path of travel." Plaintiff's request an injunction requiring the Defendants to provide "proper access to the-

aters for persons with disabilities," compensatory damages, attorney's fees, and costs.

In a prior lawsuit, *Connie Arnold, et al. v. United Artists Theatre Circuit, Inc.,* et al., No. C–93–0079–THE (N.D.Cal.1996), in the United States District Court for the Northern District of California, the court certified a nationwide class of all mobility-impaired individuals who have attended or will attend a movie in a theater owned and operated by UATC. After several years of litigation and negotiation, the parties reached a settlement. The court approved that agreement on August 14, 1996. The settlement agreement provided, *inter alia,* that UATC would make certain alterations in its theaters and stated that "neither the DOJ nor any Class member will hereafter assert or claim that UATC is required to make additional or different modifications to its Existing Theatres or Recently–Constructed Theatres, or is required to follow different standards for Future Construction, beyond what it agreed to herein, in order to comply with federal ... laws...." Settlement Agreement (Exhibit A to Defendant Kelley's Brief in Support) at 2–3. In its order approving the agreement, the court found the agreement "fundamentally fair, adequate, and reasonable." Order (Exhibit B to Defendant Kelley's Brief in Support) at 10.

Plaintiff Kelley filed his Answer to Amended Complaint, Affirmative Defenses and Motions to Dismiss on September 27, 1996. In his Brief in Support of Motion to Dismiss, Plaintiff Kelley argues that, under the doctrine of preclusion, the *Arnold* settlement agreement and the judicial order approving it bar Plaintiffs' federal ADA claim and that the Court should exercise its discretion to dismiss Plaintiff's state ACRA claim

### II

### The Relevant Law

#### A. Res Judicata and Collateral Estoppel

As the term is often expansively used, *res judicata* encompasses two separate but related doctrines regarding the preclusive effect of one judgment on a subsequent lawsuit—namely, *res judicata* and collateral estoppel *See Kaspar Wire Works, Inc., et al. v. Leco Engineering and Machine, Inc., et al.,*

575 F.2d 530, 535 (5th Cir.1978). The preclusive effect of a prior judgment presents a question of law. *See, e.g., United States of America ex rel. Yankton Sioux Tribe v. Gambler's Supply, Inc.,* 925 F.Supp. 658, 663 (D.S.D.1996).

■ In general, the doctrine of *res judicata,* or claim preclusion, prevents repetitive lawsuits based on the same cause of action and thereby promotes judicial economy. *See United States v. Brekke,* 97 F.3d 1043, 1047 (8th Cir.1996), *reh'g and suggestion for reh'g en banc denied,* November 18, 1996, *petition for cert. filed,* February 13, 1997 (No. 96–7857). Application of *res judicata* to bar a claim requires the satisfaction of three requirements: "(1) the prior judgment was rendered by a court of competent jurisdiction; (2) the decision was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Id.; see also Richardson v. Alabama State Board of Education,* 935 F.2d 1240, 1244 (11th Cir.1991); *Marlene Industries Corp. v. NLRB,* 712 F.2d 1011, 1015–16 (6th Cir.1983); *Quigley v. Braniff Airways, Inc.,* 85 F.R.D. 74, 76 (N.D.Tex.1979) (citing *Wasoff v. American Automobile Insurance Co.,* 451 F.2d 767, 769 (5th Cir.1971)). The bar of *res judicata* applies to every ground of recovery which was or could have been presented in the prior action. *See Quigley,* 85 F.R.D. at 76 (citing Supreme Court precedent).

■ On the other hand, the doctrine of collateral estoppel, or issue preclusion, prevents the relitigation of an issue of ultimate fact determined by a valid and final judgment in another lawsuit involving a party to the prior litigation. *See Brekke,* 97 F.3d at 1049; *In re Monument Record Corp.,* 71 B.R. 853, 857 (Bankr.M.D.Tenn.1987) (citing *Marlene Industries,* 712 F.2d at 1015–16); *Bogosian, et al. v. Gulf Oil Corp., et al.,* 1983 WL 1824 (E.D.Pa.). Like *res judicata,* collateral estoppel prevents the expense and vexation of multiple lawsuits, promotes judicial economy, and minimizes the number of inconsistent judicial decisions. *See Monument Record,* 71 B.R. at 857 (quoting *Marlene Industries,* 712 F.2d at 1015–16). To determine whether collateral estoppel pre-

vents litigation of a certain issue, the United States Court of Appeals for the Eighth Circuit applies four criteria: "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been litigated in the prior action; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." *In re Miera,* 926 F.2d 741, 743 (8th Cir.1991).

**B. Preclusion in the Context of Consent Decrees**

■ Consent judgments are two-faced: they are, in some respects, like formal judgments on the merits and, in other respects, like contracts between parties. *See In re Carrero,* 94 B.R. 306, 309 (Bankr.S.D.N.Y. 1988). Some courts unequivocally accord the respect of a final judgment to a consent decree and apply preclusion doctrines with full force. *See Richardson,* 935 F.2d at 1244; *Surgical Laser Technologies, Inc. v. Heraeus Lasersonics, Inc.,* 1995 WL 20444 (E.D.Pa.) (citing *Interdynamics, Inc. v. Firma Wolf,* 653 F.2d 93 (3d Cir.1981), *cert. denied sub nom. Trans Tech, Inc. v. Interdynamics, Inc.,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981)); *Quigley,* 85 F.R.D. at 75; *Monument Record,* 71 B.R. at 859 (*citing Harrison v. Bloomfield Bldg. Indus., Inc.,* 435 F.2d 1192 (6th Cir.1970)).

The courts within the Eighth Circuit, however, have not uniformly applied preclusion doctrines to consent decrees. *See In re Olson,* 170 B.R. 161, 166 (Bankr.D.N.D.1994)(noting difficulty with respect to collateral estoppel); *compare United States v. Bryant,* 15 F.3d 756, 758 (8th Cir. 1994) (finding that *res judicata* barred litigation of issue that could have been raised in Tax Court despite decision based on parties' agreement); *United States Environmental Protection Agency v. City of Green Forest, Arkansas,* 921 F.2d 1394, 1404 (8th Cir.1990), *cert. denied,* 502 U.S. 956, 112 S.Ct. 414, 116 L.Ed.2d 435 (1991) (dismissing private enforcement action after consent decree in subsequently filed government enforcement action); *Crane Boom Life Guard Co. Inc. v. Saf–T–Boom Corp.,* 362 F.2d 317, 321 (8th

Cir.1966), cert. denied, 386 U.S. 908, 87 S.Ct. 853, 17 L.Ed.2d 782 (1967) (noting that a valid judgment entered by consent or agreement operates as *res judicata* to the same extent as a judgment after adjudication); *Gambler's Supply*, 925 F.Supp. at 663 (noting that, when causes of action are the same, consent decree has preclusive effect of judgment); *Falk v. Hecker*, 88 B.R. 957, 964 (Bankr.D.Minn 1988) (indicating that "[i]n Minnesota, as well as the Eighth Circuit, a consent decree has the same preclusive effect as if it was fully litigated"); *with Gall v. South Branch National Bank*, 783 F.2d 125, 127 (8th Cir.1986) (indicating that consent judgment or stipulation makes preclusion doctrines inapplicable); *United States v. Young*, 804 F.2d 116, 119 (8th Cir.1986), *cert. denied*, 482 U.S. 913, 107 S.Ct. 3184, 96 L.Ed.2d 673 (1987) (stating that collateral estoppel does not apply to consent judgments); *In re Chinnery*, 181 B.R. 954, 962 (Bankr.W.D.Mo.1995) (finding that Eighth Circuit law does not apply collateral estoppel to consent judgments). Thus, the Court is left to examine the rationales behind the relevant decisions and to reach the most legally sound conclusion.

■ The United States Court of Appeals for the Eleventh Circuit has specifically held that *res judicata* applies to consent decrees in the context of Title VII. *See Richardson*, 935 F.2d at 1244 (citing, inter alia, *In re Birmingham Reverse Discrimination Employment Litigation*, 833 F.2d 1492, 1498 (11th Cir.1987), *aff'd sub nom. Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989)). Thus, at least some authority exists for applying *res judicata* in the context of a consent judgment revolving around a claim of discrimination. Other courts are in accord that, in general, consent decrees should receive *res judicata* effect. *See, e.g., Kaspar Wire Works*, 575 F.2d at 538–39 (citing cases, including Eighth Circuit precedent, and disagreeing); *Carrero*, 94 B.R. at 309; *Monument Record*, 71 B.R. at 858 (noting the "modem general rule"); *but see Kaspar Wire Works*, 575 F.2d at 538 (holding that neither collateral estoppel nor *res judicata* apply to consent decrees because of absence of litigation and citing Fifth Circuit precedent).

■ Many courts limit the preclusive effect of consent decrees to *res judicata*. *See Kaspar Wire Works*, 575 F.2d at 539 (citing cases). Applying the doctrine of collateral estoppel in the context of a consent decree is more difficult than applying *res judicata* in that, when parties settle a case, they actually litigate nothing, and that requirement of collateral estoppel goes unsatisfied. *See Richardson*, 935 F.2d at 1245; *Kaspar Wire Works*, 575 F.2d at 537 (declining to apply collateral estoppel to consent decree because no issue was adjudicated); *Olson*, 170 B.R. at 167 (finding that the "actual litigation" requirement of collateral estoppel cannot, as a matter of logic, be satisfied in the presence of consent judgment); *Carrero*, 94 B.R. at 309. Nevertheless, two theories may support the application of collateral estoppel from a consent decree: inferring findings of the court through the decree itself or finding that the consent of the parties to be precluded from asserting certain claims is conclusively determined by the judgment. *See Monument Record*, 71 B.R. at 858 n. 6 (citing 1B Moore, Federal Practice, 811, 814 (1984)).

It is the conclusion of the Court that the Eighth Circuit Court of Appeals would embrace the second theory. In *Brekke*, the Eighth Circuit noted that, because settlements normally do not involve factual concessions or stipulations, "the general rule is that a consent judgment has no issue-preclusive effect *unless it is clearly shown that the parties intended to foreclose a particular issue in future litigation.*" *Brekke*, 97 F.3d at 1049 (emphasis added). Thus, many courts focus on whether the parties agreed to preclude a certain issue in the consent decree. *See Richardson*, 935 F.2d at 1245; *Kaspar Wire Works*, 575 F.2d at 538–39 (stating that, although preclusion doctrines do not apply to consent judgments,.court may dismiss case because parties have contracted to end controversy); *Olson*, 170 B.R. at 167 (declaring the purely contractual nature of consent judgments and asserting primacy of parties' intent); *Monument Record*, 71 B.R. at 858 (indicating that consent decree can be issue preclusive where parties so intend). To find that intent, courts look to the

decree itself or to the record in the case. *See Richardson,* 935 F.2d at 1245. Only those issues that were reasonably foreseeable at the time of the agreement may be precluded. *See id.* at 1246; *Olson,* 170 B.R. at 168 (requiring·that parties could have reasonably foreseen the conclusiveness of their actions).

## III

### *Discussion*

### A. Implications of Class Litigation

 The Court has no difficulty concluding that Plaintiffs are members of the *Arnold* settlement class and, therefore, that the Court should treat Plaintiffs as parties to that settlement. On August 14, 1996, the *Arnold* court granted the parties' motion to expand the previously certified class to include persons with mobility impairments nationwide who are, have been, or will be affected by physical access barriers at a UATC theater. See Order at 1. The settlement agreement defines Subclass A as

> [a]ll persons who have or claim they have, or will have or will claim they have, been denied full and equal access to or been discriminated against under Title III of the ADA or regulations promulgated thereunder, or similar federal law, at or in connection with one or more of UATC's Theatre Locations in the Untied States, because they are Persons with Mobility Disabilities or are companions of such persons, and have or will have been or claim or will claim to have been aggrieved by one or more physical access barriers at any·such theatre, or are persons who could otherwise assert a claim regarding the physical access barriers at any such Theatre Location.

Settlement Agreement at 33. That language clearly encompasses Plaintiffs. Moreover, Plaintiffs do not seem to dispute their membership in the class.

 It is the opinion of the Court that the fact that the *Arnold* litigation was a class action does not in any way change the preclusion analysis. The Court recognizes that preclusion applies only where the party against whom the prior action is asserted has a full and fair opportunity to litigate the issues. *See City of Green Forest,* 921 F.2d at 1403. Although class litigation often distances many class members from the litigation, it requires a determination that representation is adequate for all members of the class. *See* Fed.R.Civ.P. 23(a). Absent some defect in the class, such as inadequate representation or insufficient notice, a final judgment in a class action binds every member of the class. *See Quigley,* 85 F.R.D. at 75 (citing *Sam Fox Publishing Co. v. United States,* 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961)). The *Arnold* court expressly found that the parties had provided adequate notice to the class.[1] *See* Order at 3. The court also found that "the class representatives can be counted on to fairly and adequately protect the interests of the class, as evidenced by, *inter alia,* their vigorous negotiation on behalf of the national·class to date." Order at 7. This Court accepts those findings of the *Arnold* court.

### B. *Res Judicata*

The obvious hurdle for Defendant Kelley with regard to the *res judicata* aspect of his Motion to Dismiss is the fact that the defendants in the instant case were not defendants in the *Arnold* litigation. Thus, the question, for purposes of a *res judicata* analysis, is whether Defendants and UATC were in privity. Normally, the question of privity arises when the party *against whom* preclusion is asserted was not a party in the prior litigation. This case, though, presents an inverse situation: the use of the doctrine is defensive and, perhaps, nonmutual. *See Richardson,* 935 F.2d at 1244. That particular posture is more commonly associated with defensive nonmutual collateral estoppel. However, if Defendants were in privity with the defendants in the *Arnold* litigation, they may benefit from whatever *res judicata* effect the consent judgment has.

---

**1.** The court also rejected a specific objection on notice grounds from Plaintiff Coates and another

class member. *See* Order at 5.

■ Privity has been defined variously. *See Falk,* 88 B.R. at 965 (cataloguing many approaches). The concept of privity is protean, and federal courts are no longer bound by inflexible definitions. *See Monument Record,* 71 B.R. at 860. The fundamental requirement, courts have consistently held, is fairness. *See id.* (citing *Anthan v. Professional Air Traffic Controllers Organization,* 672 F.2d 706, 710 (8th Cir.1982); *United States v. Karlen,* 645 F.2d 635, 639 (8th Cir.1981); *Oldham v. Pritchett,* 599 F.2d 274, 279 (8th Cir.1979); *First Alabama Bank v. Parsons Steel, Inc.,* 747 F.2d 1367, 1378 (11th Cir.1984), *rev'd on other grounds,* 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986)). In *First Alabama Bank,* the Eleventh Circuit opined that "[a] finding of privity is no more than a finding that all of the facts and circumstances justify a conclusion that nonparty preclusion is proper." 747 F.2d at 1378; *see also Monument Record,* 71 B.R. at 860 (suggesting that the word *privity* merely indicates a relationship close enough to bind both parties by a judgment involving only one party). The United States Court of Appeals for the Fifth Circuit, in *Aerojet–General Corporation v. Askew,* searched for an alignment of interests such that the original party was the instant party's "virtual representative." 511 F.2d 710, 719 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). Other courts look to "a duty, right, or interest dependent wholly or in part on the outcome of a lawsuit," "a derivative successive interest to the same property right," "adequate representation of the same legal interests," and "similar incentives, powers and opportunities to investigate and litigate." *Monument Record,* 71 B.R. at 861 (quoting cases).

■ The Court cannot hold that the *Arnold* litigation constitutes *res judicata* as to the instant suit. At this point, the Court cannot comfortably conclude that, as a matter of law, a sufficient alignment existed between the interests of the defendants in *Arnold* and the defendants in the instant litigation to constitute privity. The Court faces the initial problem of lacking any detailed facts regarding Defendants' relationship to UATC and, therefore, cannot make strong conclusions regarding Defendants'

legal responsibilities *vis-a-vis* the property at issue. The Court has been told only that Defendants own partial undivided interests in the real estate under the UATC complex in Breckenridge Village. However, the Court is unaware of any business or legal contact between Defendants and UATC other than the landlord-tenant relationship. Bearing that in mind, the Court finds it difficult to conclude that Defendants and UATC possessed an alignment of interests such that construing Defendants as privies of UATC in the *Arnold* litigation would be "fair." The doctrine of *res judicata* requires the Court to find that, in essence, the *Arnold* litigation and the instant litigation present the same lawsuit. The Court cannot, because of the uncertainty of privity here, make that finding as a matter of law.

## C. Collateral Estoppel

■ After reviewing the settlement agreement; however, the Court is of the opinion that collateral estoppel requires the dismissal of Plaintiffs' federal claim. The Court finds persuasive the reasoning of other courts who have applied the doctrine to effectuate the intent of the parties in a prior lawsuit. Moreover, the Court is of the opinion that the Eighth Circuit Court of Appeals would embrace the rule that it suggested in *Brekke:* consent judgments will foreclose the future litigation of an issue where the parties so intend. *See Brekke,* 97 F.3d at 1049. It is the conclusion of the Court that the *Arnold* settlement agreement envisions an end to ADA litigation involving UATC theaters nationwide.

The settlement agreement in *Arnold* provides that the parties desired to resolve their differences in a manner that would

> achieve improvements to access at UATC's Existing Theatres and Recently–Constructed Theatres and set standards for UATC's Future Construction, *in a manner that satisfies UATC's obligations under laws governing physical access features for Persons with Mobility Disabilities and their companions at public accommodations including but not limited to UATC's*

*obligations under the Americans With Disabilities Act . . . .*

Settlement Agreement at 2 (emphasis added). The agreement also expresses an intent to "assure that ... the Plaintiffs, *and the Class* will not attempt to enforce, and UATC will not thereby be subject to, conflicting standards regarding the physical access features of its Theatre Location ..." and to "avoid the uncertainties and costs of further or future litigation, *for all parties....*" *Id.* (emphasis added). In the settlement agreement, the *Arnold* plaintiffs, on behalf of the class, released UATC and its "predecessors, successors, affiliates, assigns, officers, directors, employees, attorneys, agents, insurers, owners, shareholders, parents companies and subsidiaries" from ADA claims such as the claim asserted by Plaintiffs in the instant suit. Settlement Agreement at 43. The Court acknowledges that the release does not specifically name landlords. Nevertheless, having considered all of this language, on balance, the Court concludes that the *Arnold* parties' intent was to foreclose future ADA litigation over UATC theater locations and that it is obvious that landlords such as Defendants are third-party beneficiaries of the settlement agreement. The class-action nature of the *Arnold* litigation imputes that intent to the instant Plaintiffs. Thus, the Court must dismiss Plaintiffs' federal claim.

Even if the Court did not reach this conclusion, it would be inclined to grant Defendant Kelley's Motion on more traditional collateral estoppel grounds, were it not for the erratic approaches taken by courts in applying collateral estoppel to consent judgments. The *Arnold* court did not merely rubber-stamp the agreement offered up by the parties. *See Falk,* 88 B.R. at 965 (noting that statutory duty to make specific findings of fact required scrutiny of settlement and, therefore, that decree satisfied "actually litigated" requirement of collateral estoppel). Because the case was a class action, the *Arnold* court was required to make its finding of the adequacy and fairness of the settlement. *See* Fed.R.Civ.P. 23(e); Restatement of Judgments, § 86 comment h, *quoted*

in *Kaspar Wire Works,* 575 F.2d at 538 n. 14. The *Arnold* court, in approving the settlement, indicated that the settlement improved access to all but a few UATC theaters nationwide and met the purposes of the ADA. *See* Order at 10. The court suggested, moreover, that the provisions of the settlement agreement "perhaps extend even beyond the ADA" Order at 15. Thus, it is the opinion of the Court that one can infer a finding by the *Arnold* court that the settlement agreement comports with the requirements of the ADA. If the Court agreed with Plaintiffs and allowed this lawsuit to progress, the Court could eventually order relief under the ADA. However, in doing so, the Court would frustrate the judgment of the *Arnold* court, which has already found that the provisions of the settlement agreement satisfy the ADA. Nevertheless, in light of the Court's holding that the intent of the *Arnold* parties was to estop Plaintiffs in the instant case, the Court need infer findings by the *Arnold* court to grant Defendant's Motion to Dismiss with regard to Plaintiffs' federal claim

## IV

### *The Remaining State–Law Claim*

The Court will dismiss Plaintiffs' state-law claim under the ACRA without prejudice. The Court has discretion to consider that claim under the. doctrine of supplemental jurisdiction. *See Wilde v. County of Kandiyohi,* 811 F.Supp. 446, 455 (D.Minn. 1993), *aff'd,* 15 F.3d 103 (8th Cir.1994) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The Court, however, will dismiss Plaintiffs' federal claim at a very early stage in the litigation. Therefore, the Court declines to retain jurisdiction over the state-law claim. *See* 28 U.S.C. § 1367(c)(3); *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139; *Wilde,* 811 F.Supp. at 455.

## V

### *Conclusion*

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss [2] be, and it is hereby, GRANTED.