United States Court of Appeals

FOR THE EIGHTH CIRCUIT

———————————

No. 96-2814

———————————

United States of America,                    *
                                             *
        Appellee,                            *
                                             *   Appeal from the United States
             v.        *                     District Court for the
                                             *  District of Nebraska.
Stanley L. Peters,                           *
                                             *
        Appellant.                           *


———————————

Submitted:  February 12, 1997

Filed: April 8, 1997

———————————

Before RICHARD S. ARNOLD, Chief Judge, and HANSEN and MORRIS SHEPPARD
      ARNOLD, Circuit Judges.

———————————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

        Stanley L. Peters appeals from a summary judgment imposing liability
on him for civil damages and penalties under the False Claims Act, 31
U.S.C. §§ 3729-3733 ("FCA"), on account of certain fraudulent acts for
which he was previously indicted and convicted.  Because we hold that this
judgment does not constitute punishment under <u>United States v. Halper</u>, 490
U.S. 435 (1989), we find that Mr. Peters's double-jeopardy argument is
unavailing.  We find his other arguments to be meritless and we therefore
affirm the decision of the district court.[1]

—————————————

        [1]The Honorable Richard G. Kopf, United States District Judge
for the District of Nebraska.

I.

The alleged danger of having children exposed to asbestos in many older schools led the federal government to fund asbestos removal through the Asbestos School Hazard Abatement Act ("Asbestos Act"), 20 U.S.C. §§ 4011-4022, administered by the Environmental Protection Agency ("EPA"), which makes grants and no-interest loans available to qualifying school districts. Stanley L. Peters and Associates ("SLPA") was an architectural and engineering firm that, among other things, assisted school districts in securing funds for the removal of asbestos. In 1989, SLPA helped the Fairbury, Nebraska public schools acquire a grant for $281,176 and a no-interest loan for $319,630 from the EPA. SLPA subsequently contracted with the school district to design and oversee the asbestos job, and hired a subcontractor to do the actual work.

The Asbestos Act provided for the disbursement of money only upon a claim by the grantee certifying that the costs had been incurred and that the work had been performed in accordance with the provisions of the act. SLPA conspired with its subcontractor to submit three claims for tasks that had not been performed and for renovation that did not qualify for reimbursement, resulting in an overpayment by the EPA to the school district in the amount of $153,476. Mr. Peters was sentenced to 24 months in prison and ordered to pay restitution in the amount of the overpayment for his part in the scheme.

The government then brought this civil action under the FCA and secured a judgment against Mr. Peters for $480,428, a sum made up of two components: $460,428, representing three times the $153,476 in damages suffered by the government; and $20,000 in fixed penalties of $5,000 for each violation of the FCA. The amount of this judgment was reduced by the amount of the restitution ordered as part of Mr. Peters's criminal sentence.

2

## II.

The rule laid down in Halper, 490 U.S. at 442, controls on the question of whether Mr. Peters has made out a double-jeopardy defense: Mr. Peters must show that his is that "particular case [in which] a civil penalty authorized by the [False Claims] Act [is] so extreme and so divorced from the Government's damages and expenses as to constitute punishment." We must ask, in other words, whether Mr. Peters's sanction was "so disproportionate to the damages caused that it constitutes a second punishment." Id. at 450. For Mr. Peters to prevail, his civil penalty must be shown to bear "no rational relation to the goal of compensating the Government for its loss." Id. at 449.

We examine, first, the component of the challenged judgment represented by the sum equal to three times the amount of damages that the government suffered. The Court in Halper had before it a double-damages provision that was part of the FCA at the time Halper was decided and found that provision to be a reasonable approximation of a remedial fine and therefore not susceptible to a double-jeopardy challenge. Id. at 446 ("the Government is entitled to rough remedial justice ... such as ... a fixed sum plus double damages"). We have held that the FCA's treble-damages provision, which went into effect in 1986, is likewise in the nature of rough remedial justice and therefore not punitive for double-jeopardy purposes. United States v. Brekke, 97 F.3d 1043, 1048 (8th Cir. 1996). Mr. Peters thus has no constitutional defense with regard to the $460,428 for which he was held liable under the treble-damages provision of the FCA.

It is therefore only the second component of the challenged judgment, the $20,000 in fixed penalties, which could possibly be subject to a double-jeopardy challenge. The Court in Halper had before it a defendant who filed sixty-five false claims, each for

3

about twelve dollars.  The FCA's fixed-penalty provision at the time <u>Halper</u> was decided called for a $2,000 fine for each false claim.  The resulting liability was more than $130,000, hugely disproportionate to the total damages of $585.  The Court did not question the validity of a fixed-penalty provision in principle, but found its application in the case before it to be punitive and thus unconstitutional, announcing "a rule for the rare case ... where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused."  <u>Halper</u>, 490 U.S. at 449.  The Court emphasized the narrowness of its holding in a footnote declaring that "[i]t hardly seems necessary to state that a suit under the [False Claims] Act alleging one or two false claims would satisfy the rational-relationship requirement. It is only when a sizable number of false claims is present that, as a practical matter, the issue of double jeopardy may arise."  <u>Id.</u> at 451 n.12.

Under <u>Halper</u>, therefore, the most important question to be asked when considering whether a fixed-penalty provision might give rise to a double-jeopardy defense is how the total fixed penalties relate arithmetically to the total damages caused.  We know certainly that the ratio in <u>Halper</u> of 224:1 is punitive, and we can infer from the Court's language -- <u>e.g.</u>, "where the recovery is *exponentially* greater than the amount of the fraud," <u>id.</u> at 445 (emphasis added) -- that a ratio of 100:1 would constitute a punishment, and perhaps the same might be true of a ratio of 10:1.  But here, the relevant ratio is not only not high, it is less than 1:1.  There is, moreover, the suggestion in <u>Halper</u> just alluded to that a fixed penalty on the order of a few thousand dollars cannot be punitive when the number of claims is relatively small.  For our purposes, then, the result called for under <u>Halper</u> seems quite clear:  The ratio of Mr. Peters's fixed penalty to the damages that

4

he caused cannot possibly support a claim that he has been subjected to double jeopardy, and the fact that he was held liable for only four violations puts a substantial additional difficulty in the way of his argument's success.

## III.

Finding no merit in any other issue presented by Mr. Peters, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.