UNITED STATES of America,
Plaintiff,

v.

SOUTHERN MARYLAND HOME
HEALTH SERVICES, INC.,
et. al. Defendants.

No. CIV.A. S–00–0238.

United States District Court,
D. Maryland.

May 9, 2000.

---

Charles J. Peters, Assistant United States Attorney, Lynne A. Battaglia, U.S. Attorney, Baltimore, MD, for plaintiff.

Thomas C. Morrow, Law Office, Towson, MD, Katherine Karker–Jennings, Karker–Jennings, P.A., Baltimore, MD, for Southern Maryland Home Health Services, Inc., a Maryland Corporation, defendant.

Diane M. Cannon, Laurel, MD, pro se.

## MEMORANDUM OPINION AND ORDER

SMALKIN, District Judge.

The Court is called upon to decide an issue of first impression in this Circuit, *viz.*, whether a corporate employer is vicariously liable as a matter of law under the False Claims Act ("FCA") as a result of the misdeeds of a low-level employee who, acting within the scope of her employment, caused false claims to be filed with the Government without the knowledge or consent of her employer. Under the facts of this case, the Court answers that question in the negative, and holds that liability will attach only if some degree of culpability, other than simply employing the malefactor, is ascribable to the employer. Accordingly, the Government's motion for partial summary will be DENIED. The defendant's cross–motion for summary judgment will also be DENIED, because the Government is entitled to discovery to ascertain whether or not the corporate defendant had the requisite culpability to trigger liability under the FCA.

## BACKGROUND

This case follows from the illegal actions of Diane Cannon who, among other things, impersonated a physical therapist in order to gain employment with Southern Maryland Home Health Services ("SMH"), a home health care provider and the defendant herein.[1] As a result of her activities, Cannon eventually pleaded guilty to federal criminal charges of health care fraud and income tax evasion and a state charge of practicing without a license. Some of Cannon's misdeeds occurred during her employment with SMH, from September, 1995 to July, 1996 (and thereafter as a contractor), to whom she held herself out as a fully qualified physical therapist. Because she was not one, Cannon gave the name of an actual licensed physical therapist as her own and provided false references from purported former employers in order to get the job with SMH. Moreover, SMH's hiring agent—who interviewed Cannon—noted that she was familiar with physical therapy terminology and procedures. Therefore, for purposes of this motion, the Court assumes that SMH was not negligent in simply hiring Cannon. Furthermore, during her tenure with SMH, SMH did not receive any complaints which would have served to put a reasonable employer on notice that Cannon was not who she claimed to be or did not have the skills she held herself out as having.

As a result of, and in the course of, her employment, Cannon treated patients in their homes. Most of these patients had insurance through the Medicare program; the Government now claims that Cannon's visits prompted 171 worthless claims to be made to Medicare, totaling $59,320. Because it is a condition of Medicare's reim-

1. The Government filed its motion for partial summary judgment contemporaneously with its complaint. Thus, it can only be granted on the basis of undisputed facts for which no discovery is required. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The facts outlined here are either undisputed or are stated as SMH alleges them to be. In essence, it is undisput-

ed by the Government and SMH that Cannon committed misdeeds. For purposes of this motion, it is assumed that SMH had no knowledge of Cannon's deceits, ratified them in any way, nor was reckless or negligent in hiring or supervising Cannon. Hence, the Government moves for summary judgment purely on the theory of *respondeat superior*.

bursement policy that a physical therapist be trained and licensed in the state in which he or she practices, for purposes of this case each of these 171 claims was false and therefore triggered liability under the False Claims Act. *See* 31 U.S.C. §§ 3729, *et seq.* The Government now argues that SMH is vicariously liable under the FCA under the theory of *respondeat superior* for each of these 171 claims.[2] It seeks treble damages of $177,960 and civil penalties of between $855,000 (assuming fines of $5,000 per claim) and $1,710,000 (assuming fines of $10,000 per claim). In total, therefore, the Government seeks between $1,032,960 and $1,887,960 in damages and penalties for actual losses of $59,320.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." In this case, there are no questions of material fact, and the Court is faced with a purely legal issue. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## ANALYSIS

■ The False Claims Act ("FCA") provides that any person who causes a false claim to be submitted to the Government is liable for a civil penalty of between $5,000 and $10,000 per claim plus three times the amount of damages the Government sustained. *See* 31 U.S.C. § 3729(a).

Such a person is only liable if the person had actual knowledge of the false claim, or acted with deliberate indifference or reckless disregard of the truth. *See* 31 U.S.C. § 3729(b). Hence, the FCA explicitly requires a degree of *scienter* beyond mere negligence to trigger liability. The question is whether that *scienter* is attributable from an employee to her employer, without more culpability on the employer's part.

### Vicarious Liability Under the FCA

■ In light of the facts in this case, SMH can only be liable under the FCA if Cannon's actions and knowledge are imputed to it. The Government argues that SMH is vicariously liable under the theory of *respondeat superior* for Cannon's actions simply because she was acting within the scope of her employment. Moreover, the Government cites several non-Fourth Circuit cases which have explicitly found employers vicariously liable under the FCA when employees perpetrated frauds without the knowledge or consent of their employers, even if the employee's actions did not benefit the employer. *See United States v. O'Connell,* 890 F.2d 563, 567–69 (1st Cir.1989) (imputing liability to the corporation based on the acts of its general manager and one-third owner, even though manager's acts did not benefit the corporation); *United States v. Hangar One, Inc.,* 563 F.2d 1155, 1158 (5th Cir.1977) (upholding vicarious liability under the FCA when low-level employee acted within the scope of employment and for the purpose of benefitting the employer); *United States v. Incorporated Village of Island Park,* 888 F.Supp. 419, 437 (E.D.N.Y.1995) (vicarious liability attaches if employee acted either within the scope of employment and to at least partially benefit the employer, or with apparent authority, even if the acts do not benefit the employer at all); *see also Grand Union Co. v. United States,* 696

2. The Government also brought a civil case against Cannon; she is not a party to these

cross-motions for summary judgment.

F.2d 888, 890–91 (11th Cir.1983) (holding that knowledge would only be imputed to employer if employee acted within scope of employment and with purpose of benefitting employer; dissent argued that court was wrongly utilizing standard for ordinary civil cases and, because FCA was essentially punitive in nature, employer must have some knowledge of employee's wrongful acts in order for vicarious liability to attach).

While these cases all strongly support the Government's argument, at lease one court has refused to impose FCA liability vicariously upon an innocent employer based on the misdeeds of an employee. *See United States v. Ridglea State Bank,* 357 F.2d 495, 498–99 (5th Cir.1966). In that case, the Fifth Circuit distinguished vicarious liability for compensatory damages from liability for violations of criminal statutes. *See id.* at 499. Whereas, in the former cases, liability would attach if the employee acted with apparent authority or within the scope of employment, in the latter the employee had to act at least with the intent to benefit the employer. *See id.* It then stated that the FCA liability in this case would provide for damages "wholly out of proportion to actual loss." *Id.* at 500. Accordingly, the court compared the FCA to a criminal statute because it essentially served to punish the wrongdoer, rather then merely to compensate the Government. *See id.* It distinguished vicarious liability under the FCA from the "ordinary civil case in which the intent of a self-serving employee is imputed to his employer." *Id.* Therefore, the *Ridglea* Court refused to hold the employer liable for FCA damages, concluding that "the knowledge or guilty intent of an agent not acting with a purpose to benefit his employer will not be imputed to the employer, when the latter is sought to be held liable under a statute requiring knowledge or guilty intent." *Id.*

The only reported decision in the Fourth Circuit discussing vicarious liability under the FCA based on unauthorized acts of an employee is *United States v. Domestic Industries, Inc.,* 32 F.Supp.2d 855 (E.D.Va. 1999). In that case, the court specifically declined to address whether the employee's knowledge would be imputed to the employer. *See id.* at 862, n. 4. In its discussion of the issue, however, the court appeared to consider very relevant whether the president of the defendant company actually knew of his employee's illegal scheme. *See id.* at 862–63. The court concluded, in denying summary judgment, that there was a material question of fact "whether either [the president of the company or the company itself] actually knew or should have known that the claims submitted were false." *Id.* at 863. While it is true that the court had originally used sweeping language asserting broad vicarious liability, as the Government quotes in its brief, the court's actual detailed discussion of the issue reflects significant doubt as to whether FCA liability does in fact attach when the employer has no knowledge of the employee's acts.

If the cases cited by the Government were Fourth Circuit cases and/or if there were no Supreme Court cases which shed doubt on their holdings, this Court would feel compelled to follow them.[3] As it is, however, this Court expressly disagrees with the strict liability theory of vicarious FCA liability effectuated by *O'Connell* and *Island Park,* and, to a lesser extent, the "benefit to the employer" analysis utilized by the Fifth and Eleventh circuits in *Hangar One* and *Grand Union.* Instead, this Court holds that, at least when the recovery sought by the Government is substantially higher than its actual losses, an employer is *not* vicariously liable under the FCA for wrongful acts undertaken by a non-*managerial* employee unless the employer had knowledge of her acts, ratified

---

3. The Government also cites *United States v. Automated Medical Laboratories, Inc.,* 770 F.2d 399 (4th Cir.1985), to support its argument. That case is not controlling, however, because it deals with criminal, not civil, liability.

them, or was reckless in its hiring or supervision of the employee.[4]

### The Analogy: Vicarious Liability for Punitive Damages

The Court reaches its conclusion by applying general principles of agency law, as they have been developed pertaining to punitive damages, to the FCA. The FCA does not merely reimburse the Government with compensatory damages. Rather, it mandates (with some exceptions) treble damages and civil penalties for each false claim submitted. In this case, the Government is seeking over $1 million in damages and fines for actual losses of only $59,320. Damages of this magnitude are punitive in nature. See United States ex rel. Long v. SCS Business & Technical Institute, Inc., 173 F.3d 870, 877–78 (D.C.Cir.1999) (FCA damages are "punitive" and not merely compensatory); Ridglea Bank, 357 F.2d at 499–500 (basing its holding, at least in part, on the disparity between the recovery sought and the Government's actual losses); United States v. Halper, 490 U.S. 435, 447–49, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (holding that FCA liability of over 220 times Government's actual loss constituted punishment for Double Jeopardy purposes), abrogated by Hudson v. United States, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). Therefore, in this case the FCA recovery provisions are considered "punitive" for purposes of assessing SMH's vicarious liability.

There is a large body of case law discussing when a principal is vicariously liable for punitive damages stemming from an agent's misdeeds. See, e.g., Embrey v. Holly, 293 Md. 128, 134, 442 A.2d 966, 969–70 (1982) (collecting cases). There is a substantial split of opinion as to when liability attaches. See id. The majority position is that the principal is liable whenever the agent acts within the scope of her employment or with apparent authority, regardless of the principal's knowledge, culpability, policies, or efforts to restrain the employee's bad acts. See, e.g., American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp., 456 U.S. 556, 566–68, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982); Embrey, 293 Md. at 134, n. 6, 442 A.2d at 969, n. 6. (collecting cases).

The minority position (albeit that of a large minority), see id. at 134, n. 8, 442 A.2d at 969, n. 8 (collecting cases), is the one taken in the Restatements of Agency and Torts. Generally speaking, this position holds that the principal is only liable if it acted with knowledge, or in reckless disregard, of the employee's wrongful acts, ratified them, consented to them, or, in some cases, if the agent was a manager. See Restatement (Second) of Agency, § 217C; Restatement (Second) of Torts, § 909; Kolstad v. American Dental Assoc., 527 U.S. 526, 119 S.Ct. 2118, 2128–29, 144 L.Ed.2d 494 (1999) (generally adopting Restatement's position).

In Kolstad, the Supreme Court had to decide whether to hold a corporate employer liable for punitive damages as a result of an employee's gender discrimination against another employee, when the employer did not know about, authorize, or ratify the illegal discrimination. See Kolstad, 119 S.Ct. at 2121. In an opinion that explicitly applied common law principles of agency (as opposed to limiting its holding to Title VII cases), the Court first stated that "[t]he common law has long recognized that agency principles limit vicarious liability for punitive awards[,] . . . . a principle, moreover, that this Court historically has endorsed." Id. at 2127 (citations omit-

---

**4.** This Court makes no statement as to vicarious liability stemming from acts perpetrated by high level officers or managers of a corporation. Compare Restatement (Second) of Agency, § 217C(c) (employer liable for punitive damages if "agent was employed in managerial capacity and was acting in the scope of employment"); Restatement (Second) of Torts, § 909 (same), with Kolstad v. American Dental Assoc., 527 U.S. 526, 119 S.Ct. 2118, 2128–29, 144 L.Ed.2d 494 (1999) (curtailing Restatement's provision for vicarious liability based on managerial actions in a Title VII punitive damages case).

ted).[5] The Court then went on to note the disagreement among lower courts as to when to allow vicarious liability for punitive damages, and stated that it would follow general common law principles and the Restatement's approach rather than any particular state-court decision. *See id.* at 2128 (citations omitted).

The Court adopted the Restatement of Agency's "strict limitations" on the application of vicarious liability for punitive damages, which provide that liability may only be imputed to the principal if:

1) he authorized the wrongful act;

2) the agent was unfit and the principal was reckless in employing him;

3) the agent was acting in a managerial capacity and within the scope of his employment; or

4) the principal or a managerial agent ratified the wrongful acts.

*See id.* (quoting Restatement (Second) of Agency, § 217C); *see also* Restatement (Second) of Torts, § 909. In short, the Court rejected the theory that an employer is vicariously liable for punitive damages based solely on the employee's apparent authority or acts committed within the scope of her employment. Instead, the Court held that the employer must be culpable in some degree in order to have the employee's knowledge and acts imputed to it for punitive damage liability. *See id.* at 2129 ("[I]t is improper ordinarily to award punitive damages against one who himself is personally liable only vicariously.") (quotation omitted). In so holding, the Court cited and reaffirmed a 19th Century decision which had reached precisely

the same conclusion. *See Lake Shore & M.S. Ry. Co. v. Prentice,* 147 U.S. 101, 107, 13 S.Ct. 261, 37 L.Ed. 97 (1893) (principal cannot be held liable for exemplary or punitive damages merely by reason of "wanton, oppressive, or malicious intent on the part of the agent.").

Applying the rationale handed down by *Kolstad* and *Lake Shore,* SMH cannot be held liable under the FCA in this case. SMH had no knowledge of Cannon's acts and did not authorize or ratify them; nor did it act recklessly in hiring her or supervising her. Moreover, on the undisputed facts, it is impossible to say that Cannon was a manager or other high-level official. Therefore, because the damages sought by the Government under the FCA are essentially punitive in nature, SMH will not be held vicariously liable for Cannon's misdeeds insofar as the FCA is concerned.[6]

### Whether to Treat FCA Liability as "Punitive" for Vicarious Liability Purposes

The above conclusion is based on the assumption that FCA damages are in fact punitive in nature. Textually, the FCA does not refer to "punitive" damages. Moreover, the Restatement (Second) of Agency explicitly passed on the question of whether statutory schemes calling for treble damages should be considered "punitive" in the application of the vicarious liability rules of § 217C. *See id.* at Comment c ("The rule stated in this Section does not apply to the interpretation of special statutes such as those giving triple damages, as to which no statement is made."). Therefore, the Supreme Court's direct application of the Restatement in *Kolstad* does not control the outcome of

---

5. Interestingly, the Court failed even to mention its last expansive look at vicarious liability for an agent's misdeeds, *see American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.,* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982), wherein the Court took essentially the opposite view and imputed liability to principals even if managers were acting *outside* the scope of their employment and without the knowledge of their employer, so long as they acted with apparent authority. *See id.* at 566, 570, 102 S.Ct. 1935.

6. This is not to say that SMH is not liable for compensatory damages under the other theories in the Government's complaint. Indeed, SMH has indicated acceptance of its compensatory liability and has offered to reimburse the Government for its actual losses, an offer the Government has apparently chosen not to accept.

this case. The rationale in *Kolstad*, however, indicates that the same rule should be applied here because the recovery sought by the Government in this case is similar in nature to a claim for punitive damages.

There have been several cases addressing the question of whether FCA damages are considered "punitive" or not. The issue generally arises in two distinct contexts. First, courts have had to consider whether FCA damages were so "punitive" as to trigger Double Jeopardy concerns. *Compare United States v. Halper*, 490 U.S. 435, 447–49, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (holding that FCA liability of over 220 times Government's actual loss constituted punishment for Double Jeopardy purposes), *abrogated by Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), *with United States v. Brekke*, 97 F.3d 1043, 1048 (8th Cir.1996) (distinguishing *Halper* on the facts, and holding that FCA damages are compensatory rather than punitive in Double Jeopardy analysis). More recently, courts have asked whether FCA damages are so "punitive" in nature that the States are exempt from liability. *Compare United States ex. rel. Long v. SCS Business & Technical Institute, Inc.*, 173 F.3d 870, 877–78 (D.C.Cir.1999) (FCA damages are "punitive" and therefore States are not liable under the FCA), *with United States ex rel. Stevens v. State of Vermont Agency of Natural Resources*, 162 F.3d 195, 207 (2nd Cir.1998) (FCA damages not "punitive;" therefore States are liable under the statute), *cert. granted* —— U.S. ——, 119 S.Ct. 2391, 144 L.Ed.2d 792 (1999).

The fact that these disagreements exist does not control the question of whether FCA liability should be considered "punitive" for purposes of determining whether innocent employers will be held vicariously liable. Merely labeling FCA damages as either "punitive" or "compensatory" does not answer any of these complicated legal questions. Rather, it is the concept behind the label which has legal significance. Regardless of whether FCA damages are "punitive" for purposes of Double Jeopardy and State exemption analyses, they are such for purposes of vicarious liability, at least when, as here, the Government is seeking well over a million dollars in light of only about $60,000 in actual losses.[7] *See Ridglea Bank*, 357 F.2d at 499–500.

This Court recognizes that the Supreme Court specifically addressed the question of imputed liability under a treble damages statute in *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) ("*ASME*"). Over a strong dissent, the Court concluded that, under the antitrust statute, an employee's wrongful acts would be imputed to the employer even though the employer did not know of or ratify the misdeeds, based on the employee's apparent authority to bind the employer. *See id.* at 577. In doing so, the Court expressly distinguished vicarious liability for punitive damages from vicarious liability for treble damages.[8] *See id.* at 575–76, 102 S.Ct. 1935.

---

7. The argument that the FCA provided for compensatory damages only had more merit prior to its 1986 amendments. Previous to that, the FCA provided only for double damages and $2,000 fines. (Yet, it was under this scheme that *Halper* was decided, wherein FCA liability was 220 times the Government's actual losses). Because the *qui tam* relator recovered such a large share of any recovery under that scheme, very often the Government only received the equivalent of compensatory damages. *See United States v. Bornstein*, 423 U.S. 303, 315, n. 11, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976). Accordingly, while it may have made sense to label FCA damages as "compensatory" prior to 1986, *see id.* at 314–15, 96 S.Ct. 523, the same cannot be said for the statute in its current form.

8. However, the Court seemed to hedge a bit on the difference between treble damages and punitive damages, by citing several cases where employers were held vicariously liable for punitive damages despite their lack of culpability. *See ASME*, 456 U.S. at 575, n. 14, 102 S.Ct. 1935.

This Court does not feel that *ASME* controls the outcome of this case for several reasons. First, this Court is of the opinion that *ASME*'s validity today has been significantly called into question by *Kolstad.* For example, whereas in the former case the Court used sweeping language extending vicarious liability, *see ASME*, 456 U.S. at 566, 102 S.Ct. 1935 ("a principle is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority"), in *Kolstad* the Court used similarly strong language opposing vicarious liability for innocent employers, see *Kolstad,* 119 S.Ct. at 2127 ("The common law has long recognized that agency principles limit vicarious liability for punitive awards."); at 2129 ("[I]t is improper ordinarily to award punitive damages against one who himself is personally liable only vicariously.") (quotation omitted). Therefore, to the extent *ASME* extended a long vicarious liability reach, *Kolstad* has significantly shortened it.

The second reason why *ASME* does not control is because it dealt with a different federal statute. The Court specifically explained that the reason why it was extending vicarious liability based on apparent authority was to effectuate the goals of the antitrust statutes. *See ASME*, 456 U.S. at 570–76, 102 S.Ct. 1935. The FCA does not share the same policy goals. In fact, in the Second Circuit's opinion, which was affirmed by the Supreme Court, the Circuit Court explicitly distinguished the FCA from antitrust laws, calling the FCA "comparatively more punitive." *Hydrolevel Corp. v. American Society of Mechanical Engineers, Inc.*, 635 F.2d 118, 126 (2nd Cir.1980), *aff'd.* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982). Moreover, other courts have recognized that *ASME*

applies only to the antitrust statute and have considered different treble damage statutes to impose "punitive" damages in different contexts. *See, e.g., United States ex. rel. Long v. SCS Business & Technical Institute, Inc.*, 173 F.3d 870, 877–78 (D.C.Cir.1999) (FCA damages are "punitive" for purposes of assessing whether States are liable under the FCA); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 912–13 (3rd Cir.1991) (RICO treble damages are "punitive;" therefore a municipality would not be held liable under RICO; court further explained that, as a rule, statutory multiple damages are a form of civil punishment, and hence punitive); *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 971 (2nd Cir.1985) (retroactive application of Trademark Counterfeiting Act's mandatory treble damages would raise *Ex Post Facto* and Due Process concerns because they are punitive in nature); *In re Cohen*, 185 B.R. 180, 188 (Bankr.D.N.J.1995) (labeling treble damages under New Jersey Consumer Fraud Act "punitive" for purposes of treatment under bankruptcy laws). Hence, *ASME*'s holding that employers are vicariously liable for their employee's acts under the antitrust statutes is properly limited to the antitrust context, and does not apply to all statutory schemes which impose treble damages.[9]

Finally, *ASME* does not control this case because the recovery scheme addressed therein provided only for treble damages, and not for treble damages *plus* substantial fines, as the FCA now mandates. As stated earlier, liability of well over $1 million for approximately $60,000 in actual losses cannot be considered anything but punitive, at least in determining whether to hold an otherwise innocent employer vicariously liable.

**9.** The Court recognizes that other cases have extended *ASME*'s holding to include vicarious liability for punitive damages. *See, e.g., Muratore v. M/S Scotia Prince*, 845 F.2d 347, 354 (1st Cir.1988) (citing *ASME* for the proposition that principals are vicariously liable for *punitive* damages). However, that reading goes well beyond the specific holding of *ASME*, which explicitly distinguished agency law pertaining to punitive damages from vicarious liability under the antitrust statutes. Furthermore, to the extent *ASME*'s holding can be extended to punitive damages, it is now in square conflict with *Kolstad*.

### Conclusion

In light of the above, this Court concludes that, in the context of the amount sought in this case, the FCA provides for "punitive" damages where amounts well beyond the actual loss to the Government are sought. Accordingly, in light of *Kolstad*, SMH is not liable under the FCA unless the Government can prove that SMH authorized, ratified or acted with knowledge of or reckless indifference to Cannon's misdeeds. Therefore, the Government's motion for partial summary judgment will be DENIED. Because discovery has not commenced in this case, and the Government might be able to show that SMH acted with the requisite culpability, the defendant's cross-motion for summary judgment will also be DENIED.

One final note—this Court recognizes that its holding today does not agree with the majority of cases which have addressed this specific issue.[10] However, it is not the only court to conclude that it would be against established agency law principles and, more importantly, unjust to hold an employer liable under the FCA for the unauthorized, illegal acts of an employee. *See United States v. Ridglea State Bank*, 357 F.2d 495, 498–500 (5th Cir. 1966). In addition, in this Court's opinion *Kolstad* represents a significant change in agency law as applied to federal statutes and makes the continued validity of the pre-*Kolstad* cases doubtful. Therefore, it is appropriate in this case to come to a different result.

### ORDER

For the reasons stated above, it is this 9th day of May, 2000, ORDERED that the Government's motion for partial summary judgment and the defendant's motion for summary judgment BE, and they HEREBY ARE, DENIED.

---

**10.** Despite the importance of *stare decisis* in our system, decisions such as this one, where an innocent party stands to lose well over a million dollars, should not be made simply by counting courts. Instead, independent analysis is required. Indeed, this case is similar to the situation before the Supreme Court which invalidated the Religious Freedom Restoration Act, *see City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), when only a few courts, including this one, had ruled the statute unconstitutional, though many had endorsed it. *See Keeler v. Mayor and City Council of Cumberland*, 928 F.Supp. 591 (D.Md.1996).